IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

LASALLE BUSINESS CREDIT, LLC, f/k/a  )
LASALLE BUSINESS CREDIT, INC.,       )     05 10268 DPW
                                     )
            Plaintiff,               )     MAGISTRATE JUDGE
                                     )     Case No.
    v.                               )
                                     )     RECEIPT #62013
CLINTON SAVINGS BANK,                )     AMOUNT $
                                     )     SUMMONS ISSUED
            Defendant.               )     LOCAL RULE 4.1
_____)     JURY TRIAL DEMANDED FORM
                                           MCF ISSUED
                                           BY DPTY. CLK.
            **COMPLAINT**                  DATE

Plaintiff, LaSalle Business Credit, LLC ("LaSalle"), f/k/a LaSalle Business Credit, Inc., for its Complaint against Clinton Savings Bank states:

**Jurisdiction**

1. Original jurisdiction over the claims asserted in this matter exists by virtue of 28 U.S.C. §1331, in that the cause of action arises under the laws of the United States, and 28 U.S.C. §1332(a), in that the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

**Venue**

2. Venue exists under 28 U.S.C. §1391(b) in that a substantial part of the events giving rise to the claim occurred in this District.

**Parties**

3. LaSalle is a limited liability company organized and existing under the laws of the State of Delaware, with executive offices in Chicago, Illinois and a locus of operations in New York, New York. LaSalle is a wholly-owned subsidiary of LaSalle National Leasing Corporation, which is a wholly-owned subsidiary of LaSalle Bank National Association

286539.1 042314-34311

("LaSalle Bank"), a federally insured national banking association, which provides funding to LaSalle.

4.  Clinton Savings Bank ("Clinton") is a bank chartered under the laws of the State of Massachusetts with its principal place of business at Clinton, Massachusetts.

## Other Participants in the Events

5.  Gitto Global Corporation ("Gitto Global") is a corporation organized in 1991 and existing under the laws of Massachusetts. It is based in Lunenburg, Massachusetts and is a certified premier compounder of specialty polyvinyl chloride, polyethylene, polypropylene, styrenic and thermoplastic olefin.

6.  Frank Miller is an individual, residing at 95 Kettle Hole Road, Bolton, Massachusetts and was the chief operating officer and president of Gitto Global. He is the sole owner of Kingsdale Corporation, which has done business as J&J Chemical Distributors. Miller is and was at all relevant times a corporator of Clinton.

7.  Kingsdale Corporation is a corporation organized and existing under the laws of the State of Massachusetts, with its principal place of business located at 77 Snead Drive, Mashpee, Massachusetts. Kingsdale Corporation is doing business as J&J Chemical Distributors, and will be referred to herein as "J&J Chemical". Its original principal place of business was the residence of Frank Miller's brother. J&J Chemical opened a checking account at Clinton in February, 2001.

8.  Charles N. Gitto, Jr., ("Charles Gitto") is an individual, residing at 18 Nancy Court, Leominster, Massachusetts and was the chairman of the board of Gitto Global. He is also an officer and owner of Tradex Corporation, which was Gitto Global's landlord.

9. Tradex Corporation ("Tradex") is a corporation organized and existing under the laws of the State of Massachusetts, with its principal place of business located at 18 Nancy Court, Leominster, Massachusetts, which is the home of Charles Gitto. Charles Gitto is an officer and owner of Tradex Corporation. Tradex Corporation owns the property at 140 Leominster-Shirley Road, Lunenburg, Massachusetts, where Gitto Global's business is located. Its sole business is to own the real estate and collect rent from the tenant, Gitto Global.

### General Factual Allegations

**LaSalle Loan to Gitto Global**

10. On or about July 25, 2002, LaSalle and Gitto Global entered into a Loan and Security Agreement ("Loan Agreement"), wherein LaSalle made a revolving loan not to exceed $27,000,000, under which LaSalle would lend up to 85% of the face amount of Gitto Global's Eligible Accounts, as defined, and 65% of the lower cost or market value of Gitto Global's Eligible Inventory, as defined, or $6,000,000, whichever was less ("LaSalle revolving loan"). Eligible Accounts was defined, inter alia, under the Loan Agreement to be "genuine," to arise from the performance of services by Gitto Global and evidenced by an invoice that was due and payable within 30 days and not less than 90 days past due. As part of the Loan Agreement, Gitto Global executed and delivered to LaSalle a Revolving Note in the original principal sum of $27,000,000.

11. On or about July 25, 2002, Gitto Global, LaSalle and Fleet Bank entered into a Three-Party Blocked Account Service Agreement, which was replaced by a substantially similar Three-Party Blocked Account Service Agreement on or about February 21, 2003 (collectively "Blocked Account Agreement").

12. Under the terms of the Blocked Account Agreement, Gitto Global established a deposit account at Fleet Bank ("Fleet Blocked Account").

13. The Blocked Account Agreement provided that, on a daily basis, and as Gitto Global received payments of invoices, Gitto Global was to deposit the payments directly into the Fleet Blocked Account. Also on a daily basis, Fleet Bank was to deposit available funds from the Fleet Blocked Account to LaSalle to pay down the LaSalle revolving loan.

14. The Loan and Security Agreement provided that Gitto Global shall deliver to LaSalle an executed daily loan report and a borrowing base certificate questing a revolving loan, accompanied by Gitto Global's sales, cash receipts and credit memo journals.

## COUNT I
## CIVIL RICO CONSPIRACY
## (18 U.S.C. §§ 1962(d), 1964(c)

15. LaSalle realleges the foregoing paragraphs 1-14.

16. LaSalle is owned by a financial institution insured by the FDIC.

17. At all relevant times, J&J Chemical was an "enterprise" within the meaning of 18 U.S.C. § 1961(4), and was engaged in and its activities affected interstate commerce. J&J Chemical was an ongoing entity having an existence distinct from the pattern of racketeering activity alleged herein.

18. Throughout the period described herein, Frank Miller, Charles Gitto, and various individuals employed by Gitto Global or associated with Gitto Global (the "Conspirators") engaged in a conspiracy to conduct J&J Chemical's affairs through a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5) (the "Conspiracy"). The objective of the Conspiracy was to defraud LaSalle, in violation of 18 U.S.C. § 1344(a)(1).

19. During the relevant period described herein, each of the Conspirators was a "person" within the meaning of 18 U.S.C. § 1961(3).

**The Check-Kite Scheme**

20. Beginning in 2001 and continuing through September, 2004, Miller, in furtherance of the Conspiracy, caused J&J Chemical to use its account at Clinton (the "J&J Chemical Account") to participate in the check-kite scheme with Gitto Global (the "Check-kite scheme") described in the following paragraphs. This scheme first involved Guaranty Business Credit, Dallas, Texas, and after LaSalle entered into the Loan Agreement in July, 2002, it then was directed at LaSalle.

21. The J&J Chemical Account was an integral part of the Check-kiting scheme.

22. Subsequent to the entry of Gitto Global and LaSalle into the Loan Agreement, false borrowing base certificates were submitted on behalf of Gitto Global in which Gitto Global's sales, accounts receivable and the value of its inventory were inflated above their actual amounts. The false sales figures were supported by fictitious sales to six companies. Gitto Global's sales were made to appear legitimate through the creation of and use of fictitious invoices, bills of lading and checks. The misrepresentations were made to induce LaSalle to advance additional funds under the LaSalle revolving loan.

23. LaSalle, in reasonable reliance upon the false information contained in the borrowing base certificates submitted by Gitto Global, advanced funds to Gitto Global in accordance with the Loan Agreement and the LaSalle revolving loan.

24. To continue the fraud upon LaSalle, the Conspirators had to make it appear that Gitto Global had received payment on the false sales. This was done by use of the Check-kite scheme.

25. Gitto Global, on a daily basis, deposited numerous checks into the Fleet Blocked Account that it purportedly received as payment of invoices for goods sold. Unbeknownst to LaSalle, the vast majority of these checks were drawn upon the J&J Chemical Account.

Between July, 2002 and September, 2004, over 600 J&J Chemical checks were deposited to the Fleet Blocked Account by Gitto Global.

26. Fleet Bank, on a daily basis, transferred the funds from the Fleet Blocked Account to a controlled disbursement account for Gitto Global at LaSalle Bank in Chicago, Illinois ("LaSalle Account"), which LaSalle applied to pay down the LaSalle revolving loan.

27. As funds were applied daily against the LaSalle revolving loan, funds became available for LaSalle to advance to Gitto Global, which were deposited to the LaSalle Account.

28. Each day, based on a daily borrowing base certificate, Frank Miller, or someone acting at his direction, requested an advance on the LaSalle revolving loan for Gitto Global.

29. LaSalle advanced additional funds on the LaSalle revolving loan, relying on (a) the funds transferred from the Fleet Blocked Account, and (b) the representations in the daily borrowing base certificates.

30. Between July, 2002 and August, 2004, a Gitto Global employee prepared Gitto Global checks drawn on the LaSalle Account payable to J&J Chemical between July, 2002 and August, 2004, which were deposited at Clinton.

31. Clinton's policy during the relevant time period was to allow its customers, including J&J Chemical, to draw against uncollected funds.

32. Between July, 2002 and August, 2004, over $34 million went through the J&J Chemical Account, all based upon transactions with Gitto Global.

33. Gitto Global's monthly deposits of the purported sales proceeds from J&J Chemical and the funds advanced by LaSalle to Gitto Global based upon those monthly deposits and borrowing base certificates were as follows:

| Month    | Deposits     | Advances      |
|----------|--------------|---------------|
| July - 02 | $ 2,206,314 | $ 31,676,094 |

| Month | Deposits | Advances |
|---|---|---|
| August - 02 | $ 8,058,446 | $ 7,830,571 |
| September - 02 | $ 6,906,243 | $ 6,853,652 |
| October - 02 | $ 11,911,623 | $ 11,676,236 |
| November - 02 | $ 11,076,928 | $ 10,921,079 |
| December - 02 | $ 10,825,588 | $ 10,469,837 |
| January - 03 | $ 11,307,584 | $ 11,076,445 |
| February - 03 | $ 13,428,035 | $ 13,370,847 |
| March - 03 | $ 17,989,492 | $ 17,051,892 |
| April - 03 | $ 16,861,179 | $ 16,682,760 |
| May - 03 | $ 17,315,021 | $ 17,575,707 |
| June - 03 | $ 21,454,438 | $ 21,352,037 |
| July - 03 | $ 26,243,609 | $ 24,893,301 |
| August - 03 | $ 31,548,658 | $ 32,463,644 |
| September - 03 | $ 39,132,440 | $ 38,793,490 |
| October - 03 | $ 56,432,129 | $ 55,831,065 |
| November - 03 | $ 50,144,000 | $ 50,425,294 |
| December - 03 | $ 63,338,487 | $ 62,982,818 |
| January - 04 | $ 62,414,067 | $ 62,408,403 |
| February - 04 | $ 64,349,419 | $ 64,156,518 |
| March - 04 | $ 84,177,796 | $ 83,702,822 |
| April - 04 | $ 87,493,856 | $ 87,445,682 |
| May - 04 | $ 74,263,805 | $ 74,069,272 |
| June - 04 | $ 91,703,488 | $ 91,553,653 |
| July - 04 | $ 91,966,853 | $ 91,590,499 |
| August - 04 | $ 90,761,602 | $ 90,829,260 |
| September 15, 2004 | $ 41,190,439 | $ 37,152,378 |
| Total | $ 1,104,501,539 | $ 1,124,835,256 |

34.  On September 24, 2004, Gitto Global filed bankruptcy.

35.  As of February 2, 2005, there is due and owing to LaSalle from Gitto Global $28,032,797.27, plus interest and costs.

## Clinton's Participation in the Conspiracy

36. The operation of the Check-kite scheme resulted in millions of dollars passing through the J&J Chemical Account. In late October, 2003, Clinton became concerned about the size of the daily deposits into and the daily withdrawals from the J&J Chemical Account.

37. In early 2004, Clinton, which was monitoring the J&J Chemical Account, observed that all of the checks being deposited in the J&J Chemical Account were drawn on the Gitto Global LaSalle Account and all of the checks written on the J&J Chemical Account were payable to Gitto Global.

38. By April, 2004, the dollar amount of the activity in the J&J Chemical Account was so great that Clinton had to borrow money from the Federal Reserve to cover the daily activity.

39. By April, 2004, Clinton had actual knowledge that the J&J Chemical Account was being used in the Check-kite scheme. Clinton knew that LaSalle was honoring checks drawn by Gitto Global on its LaSalle Account based upon J&J Chemical checks which did not have good funds to pay them.

40. Banks are required to exercise safe and sound banking practices.

41. The safe and sound course that Clinton should have taken in April, 2004 with respect to the Check-kite scheme was to close the J&J Chemical Account and to notify LaSalle Bank of the Check-kite.

42. Instead of taking any action to end the Check-kite scheme, or at least contain its effect on others, Clinton agreed to join the Conspiracy to operate J&J Chemical to defraud LaSalle by continuing to provide services for the J&J Chemical Account.

43. By continuing to accept and provide good funds for the Gitto Global checks deposited to the J&J Chemical Account before they cleared Fleet Bank, Clinton in effect loaned the amount of such checks to J&J Chemical.

44. In July, 2004, Clinton, as compensation for its participation in the conspiracy to use the J&J Chemical Account for the Check-kite scheme, formalized its lending relationship with respect to the Check-kite scheme by entering into an $8.4 million revolving loan agreement with J&J Chemical that was to expire on August 16, 2004, and was later extended to September 15, 2004.

45. As part of the revolving loan transactions, Clinton was able to obtain from Miller and Charles Gitto, who was acting to protect and ensure the continuance of the fraud being perpetrated upon LaSalle, the following security:

- In July 2004, Charles Gitto, as president and treasurer of Tradex, had Tradex provide Clinton a limited non-recourse guarantee, a mortgage on the property occupied by Gitto Global (the "Tradex Mortgage") and a security interest in certain inventory;

- In August, 2004, Charles Gitto gave Clinton unlimited guarantees from him and Tradex; and

- In August, 2004 Frank Miller and his spouse, pledged a third mortgage on their residence.

46. Clinton, in furtherance of the Conspiracy, continued support of the J&J Chemical Account.

47. Because Clinton continued to provide the J&J Chemical Account with the services necessary for the operation of the Check-kite scheme, Gitto Global was able to make it

appear to LaSalle that the amount of Gitto Global's actual sales, and thereby its eligible accounts receivable securing the money loaned to Gitto Global, were increasing and that substantial security existed for the amount loaned to Gitto Global, when in fact the portion of Gitto Global's sales and accounts receivable that were fictitious was becoming larger. As a result, the ultimate loss to LaSalle was greater than it otherwise would have been.

48. Between September 13-17, 2004, Gitto Global deposited into the Fleet Blocked Account over $12 million in additional checks from the J&J Chemical Account made payable to Gitto Global. Fleet Bank wired those funds to LaSalle in three separate wire transfers. LaSalle advanced approximately $4 million dollars in response to Gitto Global's request for advances and in reliance on these deposits.

49. When J&J Chemical did not pay the amount of its revolving loan, Clinton dishonored $11,890,588 in checks drawn on the J&J Chemical Account that Gitto Global had deposited in the Fleet Blocked Account and declared J&J Chemical in default on its revolving loan.

50. Fleet Bank returned the checks totaling $11,890,588 for insufficient funds that had been returned by Clinton, resulting in an overdraft in the Fleet Blocked Account.

51. LaSalle has been damaged by the conduct of Clinton set forth herein in an amount in excess of $11 million.

WHEREFORE, Plaintiff, LaSalle Business Credit, LLC, prays for the following relief against Clinton Savings Bank:

   A. Compensatory damages in an amount exceeding $11,000,000.00, together with interest thereon;

   B. Treble damages for violation of RICO, together with interest thereon;

    C.    An award of attorneys' fees;

    D.    An award of costs and disbursements herein; and

    E.    Such and further relief as may be just and equitable under the circumstances.

## COUNT II
### Aiding and Abetting Fraud

52. LaSalle realleges the foregoing paragraphs 1-41 and 43.

53. In July, 2004, Clinton formalized its lending relationship with respect to the Check-kite by entering into an $8.4 million revolving loan agreement with J&J Chemical that was to expire on August 16, 2004, and was later extended to September 15, 2004.

54. As part of the revolving loan transactions, Clinton was able to obtain from Miller and Charles Gitto, who was acting to protect and ensure the continuance of the fraud being perpetrated upon LaSalle, the following security:

- In July 2004, Charles Gitto, as president and treasurer of Tradex, had Tradex provide Clinton a limited non-recourse guarantee, a mortgage on the property occupied by Gitto Global (the Tradex Mortgage") and a security interest in certain inventory;

- In August, 2004, Charles Gitto gave Clinton unlimited guarantees from him and Tradex; and

- In August, 2004 Frank Miller and his spouse, pledged a third mortgage on their residence.

55. Instead of taking any action to end the Check-kite scheme, or at least contain its effect on others, Clinton aided and abetted the continued operation of the Check-kite scheme by continuing to provide services for the J&J Chemical Account for five months during which

Clinton knew that the continued operation of the Check-kite scheme would cause financial damage to others.

56. Clinton's continued support of the J&J Chemical Account with knowledge that it was being employed in a check-kite was of substantial assistance to the operation of the Check-kite scheme and the fraud being perpetrated on LaSalle through Gitto Global. It sustained the continued operation of Gitto Global for the financial benefit of those who had created the Check-kite scheme.

57. Because Clinton allowed the J&J Chemical Account to continue to be used for the operation of the Check-kite scheme after Clinton knew that the J&J Chemical Account was being used for a check-kite, Gitto Global was able to make it appear to LaSalle that the amount of Gitto Global's actual sales, and thereby its eligible accounts receivable securing the money loaned to Gitto Global, were increasing and that substantial security existed for the amount loaned to Gitto Global, when in fact the portion of Gitto Global's sales and accounts receivable that were fictitious was becoming larger. As a result, the ultimate loss to LaSalle was greater than it otherwise would have been.

58. Between September 13-17, 2004, Gitto Global deposited into the Fleet Blocked Account over $12 million in additional checks from the J&J Chemical Account made payable to Gitto Global. Fleet Bank wired those funds to LaSalle in three separate wire transfers. LaSalle advanced approximately $4 million dollars in response to Gitto Global's request for advances and in reliance on these deposits.

59. When J&J Chemical did not pay the amount of its revolving loan, Clinton dishonored $11,890,588 in checks drawn on the J&J Chemical Account that Gitto Global had

deposited in the Fleet Blocked Account and declared J&J Chemical in default on its revolving loan.

60. Fleet Bank returned the checks totaling $11,890,588 for insufficient funds that had been returned by Clinton, resulting in an overdraft in the Fleet Blocked Account.

61. LaSalle has been damaged by the conduct of Clinton set forth herein in an amount in excess of $11 million.

WHEREFORE, LaSalle Business Credit, LLC, requests that judgment be entered in its favor against Clinton Savings Bank for:

A. Compensatory damages in an amount exceeding $11 million;

B. Its costs and disbursements; and

C. Such other and further relief as may be just and equitable under the circumstances.

## COUNT III
### Fraudulent Transfer
### (Mass. Gen. L. Ch. 109A, § 5)

62. LaSalle realleges the allegations in the foregoing paragraphs 1-61.

63. Charles Gitto was a major participant in the fraud perpetrated on LaSalle through Gitto Global, for which the Check-kite scheme was a critical element.

64. When Charles Gitto caused Tradex to provide Clinton with the Tradex Mortgage to secure the revolving loan being made for the continued operation of the Check-kite scheme through the J&J Chemical Account, Tradex joined in the conspiracy.

65. LaSalle is a creditor of Tradex because of Tradex's participation in the conspiracy.

66. On October 25, 2004, LaSalle filed a lawsuit in this Court, which is presently pending, against Tradex and others based in part on conspiracy to defraud, which complaint was

amended on December 31, 2004 to include Tradex as a defendant in the count based on RICO conspiracy.

67. On October 25, 2004, an attachment in favor of LaSalle on Tradex' real estate was approved and the attachment was recorded.

68. The Tradex Mortgage given to Clinton to secure the revolving loan to J&J Chemical was given by Tradex without receiving a reasonably equivalent value in exchange for the obligation.

69. Tradex at the time that it gave Clinton the Tradex Mortgage believed, or reasonably should have believed, that it would incur debts beyond its ability to pay when they became due.

70. Clinton has notified LaSalle that on February 16, 2005, it will seek to foreclose on the Tradex Mortgage, invoking the Power of Sale provision in the Tradex Mortgage, and have the real property that is the subject of the Tradex Mortgage sold at Public Auction.

71. The mortgage obligation incurred by Tradex to Clinton to secure the revolving loan made to J&J Chemical constituted a fraudulent transfer as to LaSalle, pursuant to Massachusetts General Law Ch. 109A, §5, and as such Clinton should be enjoined from foreclosing on the Tradex Mortgage on February 16, 2005.

WHEREFORE, LaSalle Business Credit, LLC, requests that the Court:

A. Declare the Tradex Mortgage granted by Tradex to Clinton Savings Bank to be a fraudulent transfer as to LaSalle Business Credit;

B. Enjoin Clinton Savings Bank from foreclosing on the Tradex Mortgage;

C. Award LaSalle Business Credit, LLC its attorney's fees, costs and expenses herein; and

D. Grant such other and further relief as is just and equitable.

## COUNT IV
### Equitable Subordination of the Tradex Mortgage

72. LaSalle realleges the allegations in paragraphs 1-71.

73. Clinton knew at the time that it received the Tradex Mortgage to secure the revolving loan being granted to J&J Chemical for its continued use of the J&J Chemical Account that such account had been and would continue to be used to conduct a Check-kite scheme that would undoubtedly result in damages to others.

74. Clinton obtained the Tradex mortgage to minimize any loss to Clinton from the operation of the Check-kite scheme.

75. It would be unjust not to treat the Tradex Mortgage as extinguished.

76. It would be unjust for Clinton to foreclose on the Tradex Mortgage.

WHEREFORE, LaSalle Business Credit, LLC requests that the Court:

A. Enter a temporary restraining order and later a preliminary injunction restraining Clinton Savings Bank from seeking to foreclose on the property provided under the Tradex Mortgage;

B. Extinguish the Tradex Mortgage;

C. Award LaSalle Business Credit, LLC its costs and expenses; and

D. Grant such other and further relief as may be just and equitable under the circumstances.

## COUNT V
### Breach of Assumed Duty

77. LaSalle realleges the allegations in paragraphs 1-50.

78. Clinton assumed a duty and created a special relationship with those reasonably foreseeable to be damaged by the Check-kite scheme and Conspiracy.

79. Clinton breached that duty by facilitating the Check-kite scheme.

80. It was reasonably foreseeable to Clinton that LaSalle could be harmed.

81. LaSalle has been damaged by the conduct of Clinton set forth herein in excess of $11,000,000.

WHEREFORE, LaSalle Business Credit, LLC prays for the following relief:

A. Compensatory damages in an amount exceeding $11,000,000, together with interest thereon; and

B. An award of costs and disbursements herein.

**Plaintiff demands a trial by Jury on all claims so triable.**

Dated: February 9, 2005

Respectfully submitted,

LASALLE BUSINESS CREDIT, LLC

By: _____
One of its attorneys

Christopher J. Panos (BBO# 555273)
Patrick W. Manzo (BBO# 651891)
Craig and Macauley Professional Corporation
Federal Reserve Plaza
600 Atlantic Avenue
Boston, MA 02210
Phone: (617) 367-9500
Fax: (617) 742-1788

286539.1 042314-34311

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
LaSalle Business Credit, LLC, f/k/a
LaSalle Business Credit, Inc.

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Christopher J. Panos
Craig and Macauley PC, 600 Atlantic Ave., Boston, MA
02210  Tel: (617) 367-9500

## DEFENDANTS
Clinton Savings Bank

County of Residence of First Listed Defendant  Worcester, MA
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)
Robert Seder
Seder & Chandler, 339 Main Street, Worcester, MA 01608
Tel: (508) 757-7774

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|                                    | PTF | DEF |                                                        | PTF | DEF |
|------------------------------------|-----|-----|--------------------------------------------------------|-----|-----|
| Citizen of This State              | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State           | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation                                        | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☒ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)
☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
18 U.S.C. Section 1962 (d), 1964 (c)
Brief description of cause: Plaintiff alleges claims for violation of RICO, Aiding & Abetting Fraud, Fraudulent Transfer, and Breach of Assumed Duty Arising Out of Defendant's Support of*

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ $11,000,000 +
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE  Judge Woodlock
DOCKET NUMBER  04-12227-DPW

DATE _____  SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

* Check-kiting Scheme.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. Title of case (name of first party on each side only) LaSalle Business Credit, LLC, f/k/a LaSalle Business Credit, Inc. v. Clinton Savings Bank

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

   [XX] I.   160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

   [ ]  II.  195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,    *Also complete AO 120 or AO 121
             740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.       for patent, trademark or copyright cases

   [ ]  III. 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
             315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
             380, 385, 450, 891.

   [ ]  IV.  220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
             690, 810, 861-865, 870, 871, 875, 900.

   [ ]  V.   150, 152, 153.

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

   LaSalle Business Credit, LLC v. Gitto, et al.   04-12227-DPW

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?
   YES [ ]   NO [XX]

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest? (See 28 USC §2403)
   YES [ ]   NO [XX]

   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?
   YES [ ]   NO [ ]

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?
   YES [ ]   NO [XX]

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).
   YES [X]   NO [ ]

   A. If yes, in which division do all of the non-governmental parties reside?
      Eastern Division [ ]   Central Division [XX]   Western Division [ ]

   B. If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?
      Eastern Division [ ]   Central Division [ ]   Western Division [ ]

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)
   YES [ ]   NO [ ]

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME   Christopher J. Panos
ADDRESS   Craig and Macauley P.C., Federal Reserve Plaza, 600 Atlantic Ave., Boston, MA   02210
TELEPHONE NO.   (617) 367-9500

(Coversheetlocal.wpd - 10/17/02)