UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LASALLE BUSINESS CREDIT, LLC, f/k/a LASSALE BUSINESS CREDIT, INC., <br>     Plaintiff <br><br> v. <br><br> CLINTON SAVINGS BANK, <br>     Defendant | Case No. 05-CV10268-DPW |

## AFFIDAVIT OF ROBERT J. PAULHUS, JR.

Robert J. Paulhus, Jr., first being sworn, states:

1. I, Robert J. Paulhus, Jr., am a Vice President of the Defendant, Clinton Savings Bank (the "Bank").

2. The information set forth herein is of my own personal knowledge, except where stated to be on information and belief, which information I believe to be true. I make this affidavit in connection with the Defendant's Opposition to Plaintiff's Motion for a Preliminary Injunction (the "Opposition").

3. Based on evidence that has come to light in the context of Gitto Global's bankruptcy proceeding, it appears that Gitto Global received advances from its revolving loan with the Plaintiff that were based on a borrowing base that was comprised of fictitious accounts receivable and over-valued inventory. It does not appear that the Plaintiff took any measures to ensure that Gitto Global's accounts receivable were legitimate, or to ensure that its inventory had the value that Gitto Global claimed.

4. During the relevant time period, the Defendant had a policy of allowing its customers to draw checks upon uncollected funds. The Defendant would pay checks drawn by the customer when those checks were presented for payment, even though the customer's

accounts did not contain funds sufficient to cover the checks, based on new deposits that had not yet cleared.

5.   Based on evidence that has come to light in the bankruptcy proceeding, it appears that Gitto Global used the advances received under its revolving loan from the Plaintiff to make payments to an affiliate, Kingsdale Corporation ("Kingsdale"), which payments were deposited into Kingsdale's account with the Defendant. Kingsdale was also known under the name "J&J Chemical Corporation."

6.   Finally, the evidence that has come to light in the bankruptcy proceeding suggests that the funds were paid by J&J Chemical/Kingsdale to Gitto Global, into a blocked account maintained by Gitto Global with Fleet National Bank. Each day, the balance of the blocked account was transferred by Fleet Bank to the Plaintiff to be applied to the Plaintiff's revolving loan to Gitto Global.

7.   In late 2003 and early 2004, the Defendant became concerned about the volume of the transfers among Gitto Global, Kingsdale Corp. d/b/a J&J Chemical. The Defendant had several communications with Frank Miller, who was in control of Kingsdale Corp. Mr. Miller provided an explanation for the transfers that, at the time, appeared to be reasonable to the Defendants.

8.   Eventually, the Defendant notified Mr. Miller that, unless activity decreased or collected deposits increased in Kingsdale's account with the Defendant, the Defendant would close the account. Mr. Miller explained that the arrangement had to be maintained in order to facilitate the sale of Gitto Global and the real estate owned by Tradex to a California company, Vitrotech Corporation. As evidenced by the internal Clinton Savings Bank memorandum regarding Kingsdale, produced in discovery, and attached to the Plaintiff's documents as a

portion of <u>Exhibit 11</u>, and as testified to by Mr. Robert J. Paulhus, Jr. in his deposition, a portion of which was attached to the Plaintiff's documents and the entirety of which is attached to the Opposition as <u>Exhibit A,</u> the Defendant refrained from closing the Kingsdale bank account in order to facilitate this sale.

9. The Defendant, like every other creditor of Gitto Global and its affiliates, was duped by Mr. Miller's misrepresentations and the fraudulent activity of Gitto Global and its affiliates.

10. In order to accommodate Mr. Miller's requests that the Kingsdale account remain open, the Defendant required that Kingsdale's obligations to the Defendant in connection with its bank account be supported by guarantees and secured by collateral. Among the guarantees provided to the Defendant was that of another affiliate of Gitto Global, Tradex Corporation ("Tradex"), the owner of the real estate on which Gitto Global's manufacturing facilities are located and the lessor of those facilities to Gitto Global. A copy of Tradex's amended guaranty of Kingsdale's obligations is attached to the Opposition as <u>Exhibit B</u>. Tradex's guaranty of Kingsdale's obligations to the Defendant was secured by a mortgage of the Gitto Global manufacturing facilities. By providing the guaranty to the Defendant, secured by the mortgage, Tradex secured the continued existence of its single tenant, Gitto Global, and thus temporarily preserved the income stream from Gitto Global's payments on account of rent.

11. In early autumn of 2004, the fraudulent scheme orchestrated by Gitto Global, its principals and affiliates collapsed. Kingsdale proved unable to meet its obligations to the Defendant. Defendant has accordingly taken action to enforce Tradex's guaranty of Kingsdale's obligations to the Defendant.

12.     The Plaintiff, which obtained a judicial attachment of Tradex's assets after Tradex granted the mortgage to the Defendant, now seeks to enjoin the Defendant from enforcing that mortgage on the grounds that the granting of the mortgage was fraudulent under Massachusetts law as to the Plaintiff as a creditor of Tradex.

13.     The Bank has obtained an appraisal of the Premises, which is attached to the Opposition as <u>Exhibit C</u>, and which indicates that as of October 11, 2004, the value of the Premises was $2,730,000.00.  The holder of the first mortgage on the Premises has indicated that as of February 3, 2005, the total amount outstanding thereunder was $1,230,674.00.  The net equity in the Premises, therefore, is approximately $1,500,000.00.  The Bank anticipates recovering approximately $1,300,00.00 to $1,400,000.00 from a foreclosure of the Mortgage. SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 14th DAY OF FEBRUARY, 2005.

        /s/ Kevin C. McGee  
        Robert J. Paulhus, Jr.

Dated:  February 14, 2005  
       Worcester, Massachusett