# EXHIBIT C

# O'HARA - BUTHRAY ASSOCIATES, INC.

——————— Real Estate Appraisal Services ———————

11 Harvard Street
Worcester, MA 01609

Tel: (508) 757-9381
Fax: (508) 752-1544

Michael J. O'Hara, MAI, MRA
Joel Buthray, MAI

COMPLETE APPRAISAL
IN A SELF CONTAINED FORMAT

140 LEOMINSTER-SHIRLEY ROAD
AND VACANT INDUSTRIAL LOT
LEOMINSTER-SHIRLEY ROAD
LUNENBURG, MASSACHUSETTS

OWNED BY
TRADEX ACQUISITION CORP.

SEPTEMBER 25, 2004

Prepared for:   Mr. David A. Harmon, Assistant Vice President
Clinton Savings Bank
200 Church Street
Clinton, MA  01510

# O'HARA - BUTHRAY ASSOCIATES, INC.

────────── Real Estate Appraisal Services ──────────

11 Harvard Street
Worcester, MA 01609

Tel: (508) 757-8381
Fax: (508) 752-1544

Michael J. O'Hara, MAI, MRA
Joel Buthray, MAI

October 11, 2004

Mr. David A. Harmon, Assistant Vice President
Clinton Savings Bank
200 Church Street
Clinton, MA 01510

Dear Mr. Harmon:

An appraisal of the property at 140 Leominster-Shirley Road, and the vacant industrial lot at Leominster-Shirley Road, Lunenburg, Massachusetts, owned by Tradex Acquisition Corp. has been completed at your request.

The subject is comprised of two parcels of land. For purposes of valuation and clarification of items contained within the report, the two parcels are identified as follows:

**Lot 1A**: Is a vacant 5.19± acre (AC) industrial lot fronting Leominster-Shirley Road and Pioneer Drive.

**Lot 1B**: Located at 140 Leominster-Shirley Road is a 6.96± acre (AC) site improved with a 53,844± square foot (SF) industrial building.

The parcels are zoned Office Park and Industrial (OPI). Both parcels are not encumbered by leases, therefore, the value estimated is the fee simple estate.

At your request, inspection of the property was limited to the exterior of the site. The property was appraised by the appraiser in 2001. It is assumed that the condition and floor plan of the building is similar to the prior appraisal.

The estimates of value and final conclusions are subject to the assumptions and limiting conditions (Pages 7-9), and to the special limiting conditions (Page 10). They are contingent on the subject conforming to all federal, state, and municipal regulations.

The miscellaneous items in the Addendum are included to facilitate identification of the property and to support or clarify information presented in this 79 page report.

-2-

Clinton Savings Bank
October 11, 2004

The document which follows is a complete appraisal as defined by
the Uniform Standards of Professional Practice (USPAP) presented
in a self-contained report.  The appraisal is based on inspection
on September 27, 2004, and on pertinent facts about the subject
property as of this date, and on the compilation and analysis of
market data.

The estimated market values are:

**LOT 1A**
**THREE HUNDRED FIVE THOUSAND DOLLARS**
**$305,000**

**LOT 1B**
**TWO MILLION FOUR HUNDRED TWENTY-FIVE THOUSAND DOLLARS**
**$2,425,000**

This firm disclaims the validity of appraisal reports which lack
original signatures on the letter of transmittal, on the
Certification, and after the reconciliation of value estimates.

Respectfully submitted,

Joel A. Buthray, MAI
Certified General
Real Estate Appraiser
Commonwealth of MA #929

Copyright  c  unpublished O'Hara-Buthray Associates, Inc., a
Massachusetts corporation

-3-

CONTENTS

Letter of Transmittal
Executive Summary                                                    2
Assumptions and Limiting Conditions                                  5
Statement of Non Standard Conditions or Assumptions                  7
Photographs                                                         10
Purpose of This Report                                              11
Definition of Market Value                                          14
Property Rights Appraised                                           14
Scope of Appraisal                                                  14
Date of Inspection and Effective Date of Valuation                  14
Identification and History of Property                              16
Area Map                                                            16
Area Analysis                                                       17
Market Analysis                                                     18
Neighborhood Map                                                    18
Neighborhood Analysis                                               20
Zoning Data                                                         21
Tax and Assessment Data                                             21
Site Plan                                                           22
Site Analysis                                                       23
Building Floor Plan                                                 24
Building Analysis                                                   27
Highest and Best Use Analysis                                       28
Valuation Process                                                   29
  Lot 1A                                                            31
   Site Value
  Lot 1B                                                            32
   Site Value
   Cost Approach                                                    38
   Sales Comparison Approach                                        39
   Income Capitalization Approach                                   43
   Reconciliation of Value Indications                              52
Marketing and Exposure Period                                       65
Certification                                                       66
                                                                    67

Addendum
   Deed                                                             69
   Location Maps of Comparables
   Flood Map
   Engagement Letter
   Qualifications of the Appraiser
        Joel A. Buthray, MAI

## EXECUTIVE SUMMARY

| | |
|---|---|
| Report prepared for | Clinton Savings Bank |
| Property owner | Tradex Acquisition Corp. |
| Property classification | Lot 1A: Industrial land<br>Lot 1B: Industrial property |
| Property location | Lot 1A: Leominster-Shirley Road<br>Lunenburg, Massachusetts |
| | Lot 1B: 140 Leominster-Shirley Road<br>Lunenburg, Massachusetts |
| Purpose of the report | Estimate market values of subject |
| Use of the report | Client's use |
| Property rights appraised | Fee simple estate |
| Date of inspection | September 25, 2004 |
| Date of valuation | September 25, 2004 |
| Date of report | October 11, 2004 |
| Zone classification | Office park and Industrial (OPI) |

Assessment data

FY 2004
Map 114, Lot 740

| | |
|---|---|
| Total | $2,016,200 |
| Real Property Tax | $   28,630.04 |

Note: subject assessed as one parcel

| | |
|---|---|
| Size of parcel | Lot 1A: 5.19±AC site with a total of 1,023.59± feet of frontage (FF) on Leominster-Shirley Road and Pioneer Drive |
| | Lot 1B: 6.96±AC site with 455.78±FF along Leominster-Shirley Road |
| Building improvements | Lot 1B: 53,844±SF industrial building |
| Highest and best use<br>  If vacant | Both parcels: Industrial development |
| As improved | Lot 1B: existing use with potential addition |

**EXECUTIVE SUMMARY (cont.)**

**Marketing and
exposure period**                    6 months

**Valuation analysis**
    <u>Parcel 1A</u>

| | |
|---|---|
| Site value | $305,000 |
| Cost approach | Not applicable |
| Sales comparison approach | See site value |
| Income capitalization approach | Not developed |
| Final estimate of value | $305,000 |

    <u>Parcel 1B</u>

| | |
|---|---|
| Site value | $ 520,000 |
| Cost approach | $2,850,000 |
| Sales comparison approach | $2,425,000 |
| Income capitalization approach | $2,705,000 |
| Final estimate of value | $2,425,000 |

## ASSUMPTIONS AND LIMITING CONDITIONS

The estimate of value and/or opinions are subject to the assumptions and limiting conditions stated herein.

A. This appraisal is being prepared at the request of Clinton Savings Bank to estimate the market values of the subject for the client's use.

Its use for any other purpose is invalid without prior approval and written authorization of O'HARA-BUTHRAY ASSOCIATES, INC.

The use of this appraisal report, opinions, analyses, or valuation conclusions is restricted to the function specified above and for the client to whom addressed. Release to a third party for whatever purpose is prohibited and unauthorized. Unauthorized use of the report releases O'HARA-BUTHRAY ASSOCIATES, INC. of liability to the client and/or a third party.

B. This report may not be reproduced, or used in any manner except for the purpose cited in this document. This specifically prohibits the extraction of any information whole, or in part, from the report.

C. Discussions regarding this appraisal report or estimates of value are restricted to valid representatives of the client. Authorization from said client to discuss the appraisal with a third party must be in writing and will be retained on file.

D. This report is subject to the standards of the Appraisal Institute and may be reviewed by its duly authorized representatives.

E. Analyses, opinions, and conclusions are based on the assumption that:

   1. the property is under legal ownership and marketable.

   2. information supplied by the owner or a representative is accurate.

   3. data used in the report have been obtained from sources considered reliable.

   4. dimensions of buildings or sites are rounded field measurements or those obtained from municipal records or other identified resources.

   5. identified mechanical equipment is in working condition.

   6. buildings on the site are structurally sound, and unaffected by dry rot or insect infestation, which can only be determined by qualified technicians.

## ASSUMPTIONS AND LIMITING CONDITIONS (cont.)

7. identified on-site water systems are in working condition. The quality, quantity, or functioning of a water system can only be determined by a qualified technician.

8. identified on-site sewerage systems are in working condition. The type and functioning of a system can only be determined by a qualified technician.

9. testing and identification of discernible or unapparent hazards must be done by qualified technicians. The cost of remediation of environmentally hazardous substances or materials (such as, but not limited to, lead paint, asbestos, formaldehyde foam, radon, oil, toxic waste, or radioactivity, etc.) has to be deducted from the final value estimated in this report.

10. prospective valuations are based on satisfactory completion, repair, or renovation according to plans and specifications submitted for the appraisal.

11. I (We) have not made a specific compliance survey and analysis of this property to determine whether it is in conformity with the various detailed requirements of the Americans with Disabilities Act (ADA). A compliance survey of the property, together with a detailed analysis of the requirements of the ADA, may reveal that the property is not in compliance with one or more of the requirements of the Act. This could have a negative effect on the value of the property. Since I (we) have no direct evidence relating to this issue, non-compliance with ADA requirements has not been considered in estimating the value of the property.

12. unless otherwise specified, the subject property conforms to all federal, state, and municipal codes and requirements, and environmental regulations.

F. Market data

1. Sale prices of comparable properties are verified with grantors and/or grantees, attorneys, brokers, loan officers and deeds.

2. Lease data are verified with lessors and/or lessees or their representatives, brokers, or other sources deemed reliable.

3. O'HARA-BUTHRAY ASSOCIATES, INC. does not conduct field measurements of comparable sale or rental properties. Sizes are verified with brokers, grantors and/or grantees, assessor records, lessors, or lessees.

## ASSUMPTIONS AND LIMITING CONDITIONS (cont.)

G. Valuation

1. This appraisal assignment is not based on a requested minimum valuation, a specific valuation, or the approval of a loan. (USPAP Standard 1)

2. Valuation is developed by the three approaches to value whenever applicable. It may not be possible to adequately support an estimate of the value of buildings in excess of 25 years of age or of those affected by marked physical or functional depreciation, or external obsolescence by the cost approach.

3. Individual values listed separately for reproduction costs, land values, site improvements, etc. are not valid if extracted from the total or taken out of context.

## STATEMENT OF NON STANDARD CONDITIONS OR ASSUMPTIONS

At your request, inspection of the property was limited to the exterior of the site. The property was appraised by the appraiser in 2001. It is assumed that the condition and floor plan of the building is similar to the prior appraisal.



FRONT AND SIDE OF BUILDING ON LOT 1B



REAR OF BUILDING ON LOT 1B



VIEW OF LOT 1A



FACING EAST ON LEOMINSTER-SHIRLEY ROAD



FACING WEST ON LEOMINSTER-SHIRLEY ROAD



FACING SOUTH ON PIONEER DRIVE

## PURPOSE OF THIS REPORT

The purpose of this appraisal is to estimate the market values of the subject.

This report is for the client's use.

This is a complete appraisal as defined by the Uniform Standards of Professional Practice (USPAP) in a self-contained format.

## DEFINITION OF MARKET VALUE

*The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller each acting prudently and knowledgeably, and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby:*

1. *Buyer and seller are typically motivated;*
2. *Both parties are well informed or well advised, and acting in what they consider their own best interests;*
3. *A reasonable time is allowed for exposure in the open market;*
4. *Payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and*
5. *The price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions granted by anyone associated with the sale.*

Source: 12 CFR Section 34.42 (f)

## PROPERTY RIGHTS APPRAISED

Fee Simple Estate is defined as: *"Absolute ownership unencumbered by any other interest or estate, subject only to the limitations imposed by governmental powers of taxation, eminent domain, police power, and escheat".* [The Dictionary of Real Estate Appraisal, 4th ed. (Chicago: Appraisal Institute, 2002), 113]

## SCOPE OF APPRAISAL

Completion of this appraisal assignment involved:

o A field inspection of the premises and photos.

o A tour through the neighborhood and the general area of the town to note predominant characteristics such as land use, condition of properties, neighborhood influences, vacancy, etc.

-14-

o   Research at the Lunenburg town hall to review the Assessor
    field card for assessment/tax data.

    Building permit activity was reviewed, as were the most
    recent zoning bylaws.

o   Market area research included reviewing sales reports in
    Lunenburg and other areas within the market area for
    potentially comparable properties; contacting brokers and
    property owners for the purpose of obtaining and verifying
    comparable sales, rental data, vacancy rates, etc.; and
    updating information on the latest events affecting the town
    or the neighborhood.  This also included contacting local
    financial institutions to obtain current lending policies.

o   Site data and soil characteristics were researched in
    resources such as the applicable floodplain insurance rate
    map; the Soil Survey of Worcester County, Massachusetts -
    Northeastern Part, compiled by the United States Department
    of Agriculture soil (maps and descriptions); and the DEP
    Transition List of Confirmed Disposal Sites and Locations To
    Be Investigated.

o   Area demographics such as population trends, unemployment
    statistics, etc. were researched in publications such as
    Massachusetts Municipal Profiles 2004, and Employment
    and Unemployment Statistics published by the Massachusetts
    Department of Employment and Training.

o   Pertinent community and sales information was researched in
    in-house files of news articles published in the Wall
    Street Journal, Bankers and Tradesmen, New England Real
    Estate Journal, County Home Data, MassComp data, and an
    in-house data base.

o   Also researched at the Registry of Deeds were recorded deeds
    for a 3-year sales history of the subject and 3-year sales
    histories of properties considered for comparative purposes.

o   The three approaches to valuation were considered:

    The market value of the sites was developed by the sales
    comparison approach based on a comparison to 4 sales.

    The market value of Lot 1B was developed by the cost
    approach.

    The market value of Lot 1B was estimated by the sales
    comparison approach based on 5 comparable sales.

    The market value of Lot 1B was developed by the income
    capitalization approach based on 5 lease comparables.

All properties considered for comparative purposes were
visited and photographed.

## DATE OF INSPECTION AND EFFECTIVE DATE OF VALUATION

The appraiser inspected the property on September 25, 2004, the effective date of valuation.

## IDENTIFICATION AND HISTORY OF THE PROPERTY

Lot 1A is a vacant industrial parcel fronting the corner of Leominster-Shirley Road and Pioneer Drive. It is identified as Lot 1A in the site plan to follow. It is further identified as being a portion of Map 114, Lot 740 in the Lunenburg Assessor records.

Lot 1B, an industrial property, abuts Lot 1A and is located at 140 Leominster-Shirley Road. This property is identified as Lot 1B on the site plan to follow and is also a part of Map 114, Lot 740 in the Lunenburg Assessor records.

### History

**April 8, 1991:** The Gitto Corporation (now known as Tradex Acquisition Corp.) acquired the subject properties as well as other land from James J. Piermarini and Gerald J. Crowley, Trustees of Associates, Realty Trust for $200,000, recorded in the North Worcester District Registry of Deeds (NWDRD) in Book 2059, Page 249.

A copy of the deed is included in the addendum.

### Personal Property

Personal property such as silos, above ground propane gas tanks, etc. are not included in the value of the real estate.

-16-



# AREA MAP

## AREA ANALYSIS

Lunenburg is a suburban community in Northern Worcester County, bordered by Townsend to the north, Shirley to the east, Lancaster and Leominster to the south and Fitchburg to the west.

The town is accessible via state routes 2A, 13, and 225.  Route 2, and Interstate 190 (I-190) are highways accessible in neighboring Leominster.

According to the unemployment rates as of August 2004 (most recent data reported by the Massachusetts Department of Employment and Training for this area), unemployment remains high in Lunenburg and the local metropolitan statistical area.  This area is heavily reliant upon local industry which has weakened and is reflected in the unemployment rates.

| UNITED STATES 5.4% | MASSACHUSETTS 5.4% | FITCH.-LEOM. MSA 8.0% | LUNENBURG 7.4% |
|---|---|---|---|

Census data indicates that population in this town has been increasing over the past few decades including the Year 2000, although at a modest rate for the most recent 10 years.

| TOWN | 1980 | 1990 | % CHANGE 1980-1990 | 2000 | % CHANGE 1990-2000 |
|---|---|---|---|---|---|
| Lunenburg | 8,405 | 9,117 | + 8.5% | 9,401 | +3.1% |

Source: Massachusetts Municipal Profiles 2004, published by Information Publications

A factor influencing investment in real estate is current lending criteria.  Financing is available, but underwriting criteria are more exacting.  The prime rate had been increasing steadily to as high as 9.5 percent on May 17, 2000.  With the slow down in the economy, the prime rate was reduced several times to a rate of 4.00 percent, as of June 27, 2003.  Three recent increases have raised the rate to the current level of 4.75 percent.  The low interest rates have stimulated development, particularly in the residential market.

### Market Analysis

Industrial development has been non-existent in Lunenburg and very limited in general in the surrounding towns in cities over the past few years.  There previously was active new industrial development in the Devens Commerce Center located primarily in Shirley and Ayer, the location of the former government owned defense property.  There have been a few expansions of existing buildings within parks and privately owned sites in the Fitchburg and Leominster area.

According to a vacancy study of industrial properties conducted in January of 2004 by the Foster Company from Leominster, Massachusetts, covering the nearby cities of Leominster and Fitchburg, the vacancy rate of industrial space has increased from levels prior to the weakening of the economy.  Of the approximately 8,479,628±SF in the modern industrial parks in Leominster and Fitchburg, there is reportedly 12.4% vacancy, including sub-lease space.  This is an increase from the January 2003 vacancy rate of 8.5%.  On a favorable note, there are 3 known industrial buildings, totaling approximately 350,000±SF, which have either sold or are under agreement for purchase and proposed owner occupancy, which should reduce the vacancy rate closer to the level of 2003.

Based on discussions with brokers in the market area, marketing times for sales and leases has been longer than in prior years, attributed to a weakened industrial market and the downsizing of companies in the area.

Despite the increase in vacancy and weakened economy, lease rates and sale prices appear to have remained stable and in some instances shown an increase.  The industrial property at 248 Industrial Road in Leominster sold June 27, 1997 for $3,500,000, and then sold December 9, 2002 for $3,700,000 and sold again on October 2, 2003 for $5,900,000.  The industrial property at 6 Willow Road in Ayer sold September 17, 2001 for $1,500,000 and then sold February 11, 2004 for $1,694,725.

Rental rates are typically in the $4.50/SF to $6.00/SF range on a triple net basis for comparable buildings, while sale prices are generally in the $30.00/SF to $40.00/SF range.

The Lunenburg market area is comprised of primarily owner occupied buildings.  There are some investor sales taking place with overall rates of return in the range of approximately 10% to 11%.

In summary, Lunenburg and the area has been adversely impacted by the weakened economy, evidenced by increases in unemployment and vacancy rates for industrial properties.  Despite the negative factors cited, sale prices and lease rates have remained stable to slightly increasing.  This trend should continue into the future.

# NEIGHBORHOOD MAP



**SUBJECT PROPERTY**

2000 DeLorme. Street Atlas USA; © 2000 GDT, Inc. Rel. 04/2000

Mag 14.00
Tue Oct 12 08:21 2004
Scale 1:31,250 (at center)
2000 Feet
1000 Meters

| Legend | | |
|---|---|---|
| Local Road | Point of Interest | Woodland |
| Major Connector | Summit | River/Canal |
| State Route | Locale | Intermittent River |
| Trail | Cemetery | |
| Interstate/Limited Access | County Boundary | |
| Exit | Population Center | |
| Utility/Pipe | Water | |
| Railroad | Military Reserve | |

## NEIGHBORHOOD ANALYSIS

The subject, is located in the southern most point of Lunenburg, just outside both the Leominster and Lancaster town lines.

Leominster-Shirley Road is a secondary street with mostly rural traffic. Property improvements include industrial buildings including a large concrete plant, commercial warehouses, older and newer single-family dwellings, and older multi-family dwellings.

Pioneer Drive is a cul-de-sac off Leominster-Shirley Road, improved with industrial buildings including the subject. At 163 Pioneer Drive is a 160,000±SF industrial building for sale at an asking price of $37.00/SF and an asking lease rate of $4.50/SF, triple net. This building is not comparable to the subject given the substantial difference in size.

There is an active rail line abutting Lot 1B that is at grade with the subject. It was not previously in use by the property owners, however, a rail spur could be easily connected.

Access to the neighborhood is average to good. Route 70 is just southeast of the subject accessed via Leominster-Shirley Road to Fort Pond Road. Route 2 is just off Route 70, within approximately 2± miles. There are plans to connect Pioneer Drive to Harvard Street in Leominster, which would shorten the driving distance to Route 2.

Utilities available to the neighborhood include public water, sewer, electricity and telephone.

In summary, the property is in a desirable industrial park setting with average access to Route 2.

## ZONING DATA

The properties are located within the Office Park and Industrial (OPI) zoning district.

### Dimensional Requirements

The following are the dimensional requirements for office and industrial use, the most logical uses of the sites as if vacant.

| Dimensional Requirements | |
| --- | --- |
| minimum land area | 5 AC |
| minimum lot frontage | 200 FT |
| minimum front yard setback | 40 FT |
| minimum front yard setback from the centerline of a street | 60 FT |
| minimum side yard setback | 20 FT |
| minimum rear yard setback | 20 FT |

The lots conform to dimensional requirements.  Lot 1B was previously slated for expansion of the building by 34,800±SF, at which point the site would have been at its maximum development potential.  According to the Assessor's Office and Building Department, there is no record that this addition was constructed.

## Permitted uses

- o Office buildings
- o Office parks
- o Industrial parks
- o Research establishments
- o Manufacturing
- o Enclosed storage
- o Distribution
- o Earth removal and landfill operations subject to approvals
- o Retail uses and services accessory to a permitted use such as a cafeteria for employees

Lot 1B conforms to use requirements.

## TAX AND ASSESSMENT DATA

**FY 2004**
**Map 114, Lot 740**

| | |
|---|---|
| Total | $2,016,200 |
| Real Property Tax | $ 28,630.04 |

The lots are assessed and taxed as one parcel.  Compared to the combined estimated values of the two parcels, the assessment appears low.

-22-

## SITE PLAN
## (NOT TO SCALE)



## SITE ANALYSIS

### Size and configuration

Lot 1A is a 5.19±AC, slightly irregular shaped site with
a total of 1,023.59±FF on Leominster-Shirley Road and Pioneer
Drive. The depth of the site varies. The size and configuration
of the site is suitable for development potential.

Lot 1B is a 6.96±AC, slightly irregular shaped site with
455.78±FF along Leominster-Shirley Road. The depth of the site
varies. The size and configuration of the site is suitable for
the existing improvements plus the previously proposed addition.
The use of the lot would appear to be at its maximum potential if
the following completion of the addition.

### Geology

The primary soil type in the area of the subject is
(WnB) Windsor loamy fine sand, 3 to 8 percent slopes. (Soil
Survey of Worcester County Massachusetts - Northeastern part
published by the U.S. Dept. of Agriculture).

(WnB) Windsor loamy fine sand, 3 to 8 percent slopes

> This soil is very deep, gently sloping, and excessively
> drained. It is on broad areas and rolling hills. The areas
> of this soil are irregular in shape. They range from 20 to
> 150 acres, but most are about 30 acres. ...
>
> The permeability of this Windsor soil is rapid or very rapid
> throughout. Available water capacity is low. Reaction
> ranges from moderately acid to very strongly acrid
> throughout the soil.
>
> Most areas of this soil are in brushland or poor-quality
> woodland. Some areas are used for residential and
> commercial development, and a few areas are used for
> cropland.
>
> This soil is suited to cultivated crops, hay, and improved
> pasture. Droughtiness is the main limitation, and erosion
> is a hazard. ...
>
> This soil is poorly suited to trees. Droughtiness causes a
> high rate of seedling mortality for all but drought-tolerant
> species.
>
> This soil has essentially no limitations as a site for
> dwellings and local streets and roads. The sides of
> excavations in this soil are unstable, however, and steep
> sides commonly collapse. Thus, some form of shoring needed
> in steep cuts. This soil is a poor filter for septic tank
> absorption fields, and seepage of the effluent through the
> substratum causes a hazard of ground-water contamination.

-24-

Lot 1A is mostly open fields with some trees located within a wetland area. According to the site plan, there is 49,981±SF of wetlands impacting Lot 1A, towards the rear of the site, reducing the usable land area to approximately 4.05±AC.

Lot 1B is mostly a cleared lot, with some trees along the northern and western boundary lines. There is a brook that flows beneath the northwestern corner of the lot, however, it is along a driveway that does not significantly impact the subject.

The soil is described as being a poor filter for on-site sewerage disposal. Public sewer is available, which eliminates this concern.

## Environmental

No soil problems were evident from the street during inspection and the parcels are not cited in the <u>Transition List of Confirmed Disposal Sites and Locations to be Investigated</u> (Department of Environmental Protection [DEP]).

The estimates of value are contingent on conformity to all municipal, state, and federal environmental guidelines.

## Topography

Lot 1A is at road grade with Leominster-Shirley Road and Pioneer Drive. It is mostly level to gently sloping with various grades. The wetlands area in the northeast corner of the site is the lowest elevation. Overall, the difference between the low and high elevations is approximately 15± feet. The topography is well suited for development in the dry areas.

Lot 1B is at road grade with Leominster-Shirley Road. The terrain of this site slopes upward to a greater extent than Lot 1A from the front to the rear (south). The owners constructed the building to maximize the use of the terrain. Although the front and rear of the building are at different levels, each has direct access due to the terrain. There is an estimated 30± foot difference between the low and high elevations.

## Floodplain

According to Flood Insurance Rate Map (FIRM) #250315 0006B, effective June 15, 1982, both parcels are within Zone C "Areas of minimal flooding". There are no development restrictions in this zone. A copy of the FIRM is in the addendum.

## Easements/Restrictions

Both parcels are impacted by a 75' wide right of way and gas pipeline easement along the Leominster-Shirley Road frontage. Considering its location along the frontage, it is not considered a negative.

Lot 1B has the benefit of an access and utility easement on an abutting parcel to the west via Pioneer Drive.

## Utilities

Public water, sewer, electricity and telephone are available to Lot 1A; these utilities service Lot 1B.

## Site Improvements

There are no site improvements on Lot 1A.

Site improvements of Lot 1B include asphaltic concrete pavement, drainage, extensive landscaping (trees, bushes, mulch, grass, etc.), fire hydrant, light posts, chain link fencing along rail line, etc. Above ground propane tanks and silos are considered personal property, not included in the valuation.

## Depreciation and Obsolescence

Two forms of depreciation or obsolescence may affect site improvements: physical deterioration, curable or incurable and functional obsolescence, curable and incurable.

Physical deterioration is the result of wear and tear. Examples of physical deterioration impacting Lot 1B consist of:

    o Minor cracks in pavement

Functional obsolescence results from a defect in design, structure, or material which reduces utility and affects value. There is no evidence of functional obsolescence impacting the site improvements.

Case 1:05-cv-10268-DPW    Document 11    Filed 02/14/2005    Page 28 of 99

# FLOOR PLAN
## (NOT TO SCALE)



KEY PLAN — Scale: 1/16" = 1'-0"

## BUILDING ANALYSIS

The property was inspected by the appraiser in 2001.  The
following is a description of the improvements based on the prior
inspection.

**History**
| | |
|---|---|
| actual age | 12± yrs |
| effective age | 8± yrs |
| original use | industrial |
| existing use | industrial |

**Exterior construction**
| | |
|---|---|
| framing | steel and masonry |
| siding | concrete slab, concrete block, and corrugated metal |
| doors | metal and glass and metal entrance doors; 3 tailgate height doors, 2 overhead doors |
| roof design | flat |
| roof cover | rubber membrane |
| insulation | factor unknown |
| gutters/downspouts | roof drains |
| windows | metal frame |
| stories | 1 plus office mezzanine |
| condition | good |

**Mechanical**
| | |
|---|---|
| heating | offices - forced hot air by propane industrial - space heaters by gas |
| wiring | 3,000AMP and 2,000AMP service |
| plumbing | lavatories are adequate and are handicap accessible |
| air conditioning | central air in offices |
| extras | wet sprinkler system throughout and 2000 LB capacity passenger elevator to access office mezzanine space |

**Interior construction**
| | |
|---|---|
| floors | offices - carpet and tile industrial - concrete slab |
| walls | offices - drywall industrial - concrete block |
| ceilings | offices - drop ceilings industrial - corrugated metal |
| ceiling clearance | mostly 19±FT; approximately 3,900±SF is 38±FT high |
| bay spacing | 40±FT x 30±FT |
| office space | 13,770±SF (26%) |
| overall condition | good |

**Building Size**
| | | |
|---|---|---|
| | first floor | 45,894+/-SF |
| | mezzanine | 7,950+/-SF |
| | total | 53,844+/-SF |

## General Comments

The subject is comprised of a 53,844±SF industrial building constructed in 1992.  The subject has 13,770±SF of office space (26% of total); ceiling heights are predominantly 19±FT clear; approximately 3,900±SF is 38±FT clear.  Bay spacing is adequate ranging from 40±FT x 30±FT.  The building is of good quality construction.

## Depreciation/Obsolescence

A building may be impacted by physical deterioration, curable or incurable; functional obsolescence, curable or incurable; and external obsolescence, which is incurable.

There are three forms of depreciation or obsolescence which can affect building improvements:  physical deterioration, curable or incurable; functional obsolescence, curable or incurable; and external obsolescence, which is incurable.

Physical deterioration is the result of wear and tear.
Evidence of physical deterioration at the time of inspection in 2001 included:

  o    minimal wear and tear to the floors and walls due to the age and use of the property

Functional obsolescence results from a defect in design, structure, or material which reduces utility and affects value.

There is no indication of functional obsolescence impacting the improvements.

External obsolescence results from factors beyond the property which may exert a negative effect on its value.  Examples include high tax assessment or interest rates, neighborhood factors, environmental problems on abutting properties, or a surplus of competitive properties.

The subject is not impacted by external obsolescence.

## HIGHEST AND BEST USE ANALYSIS

Highest and best use is defined as:"*the reasonably probable and legal use of vacant land or an improved property, which is physically possible, appropriately supported, financially feasible, and that results in the highest value. The four criteria the highest and best use must meet are legal permissibility, physical possibility, financial feasibility, and maximum productivity,*"  [The Dictionary of Real Estate Appraisal, 4th ed. (Chicago: Appraisal Institute, 2002), 135]

### Comparable #1: 100 Groton Shirley Road, Ayer, MA

June 24, 2002 sale of a 9.40±AC industrial site for $565,000 ($60,106/AC). The site has subsequently been developed with a 72,400±SF industrial building with the potential for expansion.

Upward adjustment:

**Utilities**: The comparable is not serviced by public sewer; public sewer is available to the subject.

**Lot Size**: The comparable is 9.4±AC; the subject is effectively 4.05±AC. Smaller industrial lots tend to sell for a higher price/AC due to a greater number of potential buyers.

**Configuration**: The comparable is impacted by a highly irregular Z shape; the subject is not adversely impacted by configuration.

Downward adjustment:

**Rail**: The comparable has the availability of rail; subject Lot 1A is not serviced by rail.

The net adjustment is upward.

### Comparable #2: Central Street, Hudson, MA

February 3, 2003 sale of a 7.43±AC industrial site of which approximately 4±AC is usable for $375,000 (effectively $93,750/AC). The site has subsequently been developed with an industrial condominium building.

Upward adjustment:

**Utilities**: The comparable is not serviced by public sewer; public sewer is available to the subject.

Downward adjustment:

**Location**: Industrial land in Hudson tends to sell for a higher price than in Lunenburg due to a superior local economy and highway network.

The net adjustment is downward.

### Comparable #3: 287 Leominster Road (Route 12), Sterling, MA

July 12, 2004 sale of a 2.29±AC industrial site for $140,000 ($61,135/AC). The site is proposed for development with an industrial building.

Upward adjustment:

**Utilities**: The comparable is not serviced by public sewer; public sewer is available to the subject.

Downward adjustment:

None are indicated.

The net adjustment is upward.

<u>Comparable #4: Chocksett Road and Leominster Road (Route 12), Sterling, MA</u>

July 28, 2004 sale of effectively a 6.5±AC industrial site for $485,000 (effectively $74,615/AC). The site is proposed for development with apartments.

Upward adjustment:

<u>Utilities</u>: The comparable is not serviced by public sewer; public sewer is available to the subject.

Downward adjustment:

None are indicated.

The net adjustment is upward.

After adjustments, the estimated price/AC is $75,000.

| PRICE/AC | x | SIZE | = | VALUE |
|----------|---|------|---|-------|
| $75,000 | | 4.05±AC<br>Rounded | | $303,750<br>$305,000 |

As of September 25, 2004, the estimated market value of Lot 1A as if vacant and unimproved by the sales comparison approach is:

**THREE HUNDRED FIVE THOUSAND DOLLARS**
**$305,000**

<u>Lot 1B</u>

The same comparables used for Lot 1A were used to estimate the value of Lot 1B. Lot 1B is inferior to Lot 1A due to the more significant slope to the topography; Lot 1B is superior to Lot 1A in that it has rail available. Taking all factors into consideration, the value of Lot 1B is also estimated at $75,000±AC.

| PRICE/AC | x | SIZE | = | VALUE |
|----------|---|------|---|-------|
| $75,000 | | 6.96±AC<br>Rounded | | $522,000<br>$520,000 |

As of September 25, 2004, the estimated market value of Lot 1B as if vacant and unimproved by the sales comparison approach is:

**FIVE HUNDRED TWENTY THOUSAND DOLLARS**
**$520,000**

## ESTIMATE OF VALUE BY THE COST APPROACH

The process of valuing Lot 1B by the cost approach involves estimating the reproduction or replacement costs new of the building and site improvements, and the indirect costs; deducting all forms of depreciation or obsolescence; then adding the contributory value of the land.

Indirect costs incurred during construction include interest on the loans for the purchase of the land; interest on the building and site improvements; real estate tax; and entrepreneurial profit.

### Interest on Loan for Purchase of Land

The purchase of land is usually done with borrowed funds, which incurs financing costs (interest). Loans from financial institutions for the purchase of land are typically based on a 60% loan to value ratio. Given the estimated land value of $520,000, the resultant loan would total $312,000.

| LAND VALUE | x | LOAN TO VALUE RATIO | = | MORTGAGE AMOUNT |
|------------|---|---------------------|---|-----------------|
| $520,000 | | .60 | | $312,000 |

Assuming all approvals and permits have been obtained, the construction period estimated is 6 months from the date of the land purchase.

Interest would be incurred throughout this period of time, at a typical interest rate of 1.5% over prime. Since the prime rate as of the date of appraisal is 4.75%, the interest rate being used in this valuation is 6.25%.

| MORTGAGE AMOUNT | x | ANNUAL INTEREST RATE | x | DURATION | = | INTEREST EXPENSE LAND PURCHASE |
|-----------------|---|----------------------|---|----------|---|-------------------------------|
| $312,000 | | .0625 | | .50 year | | $9,750 |

### Entrepreneurial Profit On The Land

Entrepreneurial profit is the difference between the total cost of the project and the amount the developer expects to receive to cover administrative costs as well as the anticipated return on the investment. It does not appear possible for a developer to attain any entrepreneurial profit.

-39-

## Real Estate Tax

The real estate tax owed in the first year is based on the assessment of the land, multiplied by the current tax rate per thousand dollars of value, multiplied by the duration period.

The subject two parcels are assessed as one tract in the assessors records at $610,600. Lot 1B is 57% of the total land area of the two sites, therefore 57% of the assessment is attributed to Lot 1B, or $348,042 ($610,600 x .57 = $348,042).

| ASSESSED VALUE | x | TAX RATE | x | DURATION | = | EST. R.E. TAX |
|----------------|---|----------|---|----------|---|---------------|
| $348,042 | | $14.20/$1,000 | | .50 year | | $2,471 |

## Building Improvement

Using the Marshall & Swift Commercial Estimator program as a resource, the replacement cost new of the building is estimated at $2,766,115 (see following page).

## MARSHALL & SWIFT COST ESTIMATE

| | | |
|---|---|---|
| Estimate Number | : | 13 |
| Property Owner | : | Tradex Acquisition Corp. |
| Property Address | : | 140 Leominster Road |
| Property City | : | Lunenburg |
| State/Province | : | MA |
| ZIP/Postal Code | : | 01462 |

### Section 1

**Occupancy**

| Class | Height | Rank |
|---|---|---|
| Wood or steel framed exterior walls | 22.00 | 2.5 |

100% Industrials, Light Mfg.
Total Area : 45,894
Number of Stories (Building) : 1.00
Number of Stories (Section) : 1.00
Shape : 2.00

**Components**

| | Units/% | Other | | |
|---|---|---|---|---|
| HVAC (Heating): | | | | |
| Warmed and Cooled Air | 26% | Climate | : | 2 |
| Space Heater | 74% | Climate | : | 2 |
| Elevators: | | | | |
| Passenger # | 1 | Stops | : | 2 |
| Sprinklers: | | | | |
| Wet Sprinklers | 100% | | | |
| Mezzanines: | | | | |
| Mezzanines-Office | 7,950 | | | |

Cost as of    10/2004

| Basic Structure | Units/% | Cost | Total |
|---|---|---|---|
| Base Cost | 45,894 | 37.28 | 1,710,928 |
| Exterior Walls | 45,894 | 9.06 | 415,800 |
| Heating & Cooling | 45,894 | 3.98 | 182,618 |
| Elevators | 1 | 55,491.00 | 55,491 |
| Sprinklers | 45,894 | 2.09 | 95,918 |
| Mezzanine | 7,950 | 38.41 | 305,360 |
| Basic Structure Cost | 45,894 | 60.27 | 2,766,115 |

-41-

## Interest on Loan for Building Improvement

The interest on financing for construction of building
improvements is incorporated in the cost estimate of the Marshall
& Swift Commercial Estimator program.

## Depreciation/Obsolescence of Building Improvements

The depreciation to be deducted from the cost of the improvements
new in order to estimate the depreciated value of the building
has been estimated by the age-life method.

The term age-life method is defined as: *"A method of estimating
accrued depreciation in which the ratio between the effective age
of a building and its total economic life is applied to the
current cost of the improvements to obtain a lump-sum deduction"*
[The Dictionary of Real Estate Appraisal, 4th ed. (Chicago:
Appraisal Institute, 2002), 8]

Buildings similar to the subject have an estimated average
40-year economic life span.  At an estimated effective age of 8
years for the building, the percentage of depreciation is 20%.

| EFFECTIVE AGE / 8 years | ECONOMIC LIFE 40 years | = | % of DEPRECIATION .20 |
|---|---|---|---|

| COST OF BUILDING $2,766,115 | x | % OF DEPRECIATION .20 | = | DEPRECIATION $553,223 |
|---|---|---|---|---|

| Building cost new | $2,766,115 |
|---|---|
| Less depreciation/obsolescence | ($ 553,223) |
| Depreciated value of building improvements | $2,212,892 |

## Site Improvements

A site plan denoting the site improvements was not available for
a prior appraisal conducted for the property and for the current
appraisal, therefore, it is difficult to accurately assess the
cost of the site improvements.  Based on a review of other
industrial properties appraised, the cost of site improvements
based on prior observation and for improvements supportive of a
building of this size would be in the approximately $200,000
range.  This is the figure used.

## Interest on Loan for Site Improvements

The interest on financing for construction of site improvements
is incorporated in the Marshall Valuation Service cost estimate.

## Depreciation of the Site Improvements

The percentage of depreciation to be deducted from the cost of the site improvements new in order to estimate the depreciated value of the site improvements is also being done by the economic age-life method.

The economic life of site improvements ranges from 13 to 18 years; 15 years is considered average. Given that the site improvements appear to be in average to good, the effective age estimated is 7 years.

| EFFECTIVE AGE | / | ECONOMIC LIFE | = | % of DEPRECIATION |
|---|---|---|---|---|
| 7 years | | 15 years | | .47 |

| EST. COST SITE IMPROV. | x | % DEPRECIATION | = | PHYS. DEPRECIATION |
|---|---|---|---|---|
| $200,000 | | .47 | | $94,000 |

| | |
|---|---|
| Estimated cost site improvements | $200,000 |
| Less physical depreciation | ($ 94,000) |
| Depreciated value of site improvements | $106,000 |

The total value by the cost approach is summarized as follows:

| SUMMATION | |
|---|---|
| Land value | $ 520,000 |
| Interest on land loan | 9,750 |
| Real estate tax | 2,471 |
| Value of building improvements | 2,212,892 |
| Value of site improvements | $ 106,000 |
| Indicated value by the cost approach | $2,851,113 |
| Rounded | $2,850,000 |

As of September 25, 2004, the estimated market value of the subject by the cost approach is:

**TWO MILLION EIGHT HUNDRED FIFTY THOUSAND DOLLARS**
**$2,850,000**

## ESTIMATE OF VALUE BY THE SALES COMPARISON APPROACH

Research conducted in Lunenburg and the market area for comparable sales revealed a 2002 sale in Leominster, a 2003 sale in Sterling, a 2003 sale in Leominster, a 2003 sale in Gardner, and a 2003 sale in Fitchburg.

Following are the data summaries of the comparables and a narrative explanation of the adjustments made to each in comparison to the subject.

The unit of measure used for comparison is price/SF.

-43-

## INDUSTRIAL BUILDING COMPARABLE # 1



ADDRESS     TOWN: LEOMINSTER            STATE: MASSACHUSETTS
            STREET: 36 JYTEK ROAD

TYPE OF PROPERTY: INDUSTRIAL

STATE CLASS CODE: 400                   ZONING: INDUSTRIAL

GRANTOR: NORMAN GARIEPY, TRUSTEE        GRANTEE: LAJECO, LLC

SALE DATE: 06/14/02  BOOK 4224     PAGE 284      REGISTRY: NWCRD

SALE PRICE $1,100,000.00                VERIFIED: GRANTEE (JB) 7/02

MORTGAGE   1ST $1,000,000 SOVEREIGN     2ND NONE NOTED

ASMT LAND $ 191,100   IMPRV $ 521,300   TOTAL $ 712,400    TAXES $ 10,030.59

UTILITIES   WATER: PUBLIC   SEWER: PUBLIC   GAS: PUBLIC     ELECTRIC: PUBLIC

LAND AREA +/-SF: 140,204    +/-AC: 3.219      +/-FF: 275

TOPOGRAPHY: GENTLY SLOPING PARKING: ADEQUATE      ACCESS: GOOD

BUILDING    GROSS AREA +/-SF: 32,200      # OF BUILDINGS: 1
            OFFICE AREA +/-SF: 500        SHIPPING DOCK: 1 DRIVE IN, 7 TAIL.
            FACTORY AREA +/-SF: 0         HEIGHT CLEARANCE: 16
            WAREHOUSE AREA +/-SF: 31,700  RAIL: NO
            ELECTRICAL: ADEQUATE          EFF. AGE: 20
            SPRINKLERED: WET              CONDITION: AVERAGE
            MISCELLANEOUS: BOUGHT FOR OWNER OCCUPANCY

PRICE/SF BUILDING $34.16

REMARKS INDUSTRIAL PROPERTY BOUGHT FOR OWNER OCCUPANCY.

## INDUSTRIAL BUILDING COMPARABLE # 2



ADDRESS        TOWN: STERLING                    STATE: MASSACHUSETTS
               STREET: 16 CHOCKSETT ROAD

TYPE OF PROPERTY: INDUSTRIAL

STATE CLASS CODE: 400                    ZONING: LIGHT INDUSTRIAL

GRANTOR: STERLING REALTY TRUST, LLC      GRANTEE: LAWRENCE MARTIN, TRUSTEE

SALE DATE: 03/14/03  BOOK 29365    PAGE 312    REGISTRY: WCRD

SALE PRICE $2,900,000.00                  VERIFIED:BROKER (JB) 6/03

MORTGAGE    1ST BANKNORTH $3,155,000    2ND N/A

ASMT LAND $ 385,000   IMPRV $ 2,140,000  TOTAL $ 2,525,000  TAXES $ 31,183.75

UTILITIES    WATER: PUBLIC  SEWER: PRIVATE GAS: NONE       ELECTRIC: PUBLIC

LAND AREA +/-SF: 338,025.6  +/-AC: 7.760        +/-FF: 926.55

TOPOGRAPHY: GENTLY SLOPING PARKING: ADEQUATE      ACCESS: GOOD

BUILDING      GROSS AREA +/-SF: 78,757        # OF BUILDINGS: 1
              OFFICE AREA +/-SF: 8,534        SHIPPING DOCK: 4 TAILG., 2 DRIVE IN
              FACTORY AREA +/-SF: 0           HEIGHT CLEARANCE: 30
              WAREHOUSE AREA +/-SF: 70,223    RAIL: NONE
              ELECTRICAL: 800AMP              EFF. AGE: 2
              SPRINKLERED: WET                CONDITION: GOOD
              MISCELLANEOUS: EXPANSION POTENTIAL

PRICE/SF BUILDING $36.82

REMARKS PROPERTY BOUGHT FOR OWNER OCCUPANCY.  THERE IS EXPANSION POTENTIAL
        OF AN ESTIMATED 20,000+/-SF TO 40,000+/-SF.

## INDUSTRIAL BUILDING COMPARABLE # 3



ADDRESS          TOWN: LEOMINSTER              STATE: MASSACHUSETTS
                 STREET: 1776 LOCK DRIVE

TYPE OF PROPERTY: INDUSTRIAL

STATE CLASS CODE: 400                    ZONING: INDUSTRIAL

GRANTOR: SYLVIA W. LOCK, TRUSTEE         GRANTEE: BRADFORD A. SPENCER, TRST.

SALE DATE: 05/09/03  BOOK 4719    PAGE 314    REGISTRY: NWCRD

SALE PRICE $2,000,000.00                 VERIFIED: GRANTEE (JB) 8/03

MORTGAGE    1ST 1ST LAWRENCE SAVINGS BANK 2ND N/A

ASMT LAND $ 382,500   IMPRV $ 1,039,700  TOTAL $ 1,422,200  TAXES $ 18,488.60

UTILITIES    WATER: PUBLIC  SEWER: PUBLIC  GAS: PUBLIC    ELECTRIC: PUBLIC

LAND AREA +/-SF: 177,289.2  +/-AC: 4.070  .    +/-FF: 459.56

TOPOGRAPHY: GENTLY SLOPING PARKING: ADEQUATE      ACCESS: GOOD

BUILDING       GROSS AREA +/-SF: 64,445       # OF BUILDINGS: 1
               OFFICE AREA +/-SF: 6,300       SHIPPING DOCK: 6 TAIL, 1 DRIVE IN
               FACTORY AREA +/-SF: 0          HEIGHT CLEARANCE: 16
               WAREHOUSE AREA +/-SF: 58,145   RAIL: NONE
               ELECTRICAL: ADEQUATE           EFF. AGE: 20
               SPRINKLERED: YES               CONDITION: AVERAGE
               MISCELLANEOUS: 100% LEASED.

PRICE/SF BUILDING $31.03

REMARKS  PROPERTY BOUGHT FOR INVESTMENT PURPOSES.  WAS LEASED FOR 5 YEARS AT
         $3.75/NNN.

INDUSTRIAL BUILDING COMPARABLE # 4



ADDRESS        TOWN: GARDNER                    STATE: MASSACHUSETTS
               STREET: 151 SUFFOLK LANE

TYPE OF PROPERTY: INDUSTRIAL

STATE CLASS CODE: 400                    ZONING: INDUSTRIAL 1

GRANTOR: CENTEX-KIRKO INDUSTRIAL SUMMIT 1  GRANTEE: EQUITY INDUSTRIAL GHEB LP

SALE DATE: 06/13/03   BOOK 30390    PAGE 71        REGISTRY: WCRD

SALE PRICE $2,495,000.00                  VERIFIED: GRANTEE (JB) 8/03

MORTGAGE    1ST ANGLO IRISH BK. $1660000   2ND N/A

ASMT LAND $ 181,500   IMPRV $ 1,974,400  TOTAL $ 2,155,900  TAXES $ 38,202.55

UTILITIES    WATER: PUBLIC  SEWER: PUBLIC  GAS: PUBLIC    ELECTRIC: PUBLIC

LAND AREA +/-SF: 297,471.24 +/-AC: 6.829       +/-FF: 595.24

TOPOGRAPHY: GENTLY SLOPING  PARKING: ADEQUATE      ACCESS: AVERAGE

BUILDING       GROSS AREA +/-SF: 67,200       # OF BUILDINGS: 1
               OFFICE AREA +/-SF: 9,600       SHIPPING DOCK: 4 TAIL., 3 DRIVE IN
               FACTORY AREA +/-SF: 57,600     HEIGHT CLEARANCE: 24
               WAREHOUSE AREA +/-SF: 0        RAIL: NONE
               ELECTRICAL: 3,000AMP           EFF. AGE: 2
               SPRINKLERED: WET SYSTEM        CONDITION: EXCELLENT
               MISCELLANEOUS: BOUGHT FOR INVESTMENT

PRICE/SF BUILDING $37.13

REMARKS  PROPERTY BOUGHT FOR INVESTMENT.  TENANT PAYING APPROXIMATELY
         $341,193 NNN IN RENT PLUS ANNUAL INCREASES FOR 7 YEARS.
         APPROXIMATELY 20,000 OF EXPANSION POTENTIAL.

INDUSTRIAL BUILDING COMPARABLE # 5



ADDRESS        TOWN: FITCHBURG               STATE: MASSACHUSETTS
               STREET: 20 AUTHORITY DRIVE

TYPE OF PROPERTY: MANUFACTURING

STATE CLASS CODE: 400                  ZONING: INDUSTRIAL

GRANTOR: EDWINA GITTO, TRUSTEE         GRANTEE: GEOSEARCH INC., TRUSTEE

SALE DATE: 05/07/04   BOOK 5252    PAGE 310    REGISTRY: NWCRD

SALE PRICE $1,575,000.00               VERIFIED: BROKER (JB) 10/04

MORTGAGE    1ST BANKNORTH $1,865,000   2ND NONE NOTED

ASMT LAND $ 207,000   IMPRV $ 1,405,600  TOTAL $ 1,612,600  TAXES $ 33,574.33

UTILITIES    WATER: PUBLIC  SEWER: PUBLIC  GAS: PUBLIC    ELECTRIC: PUBLIC

LAND AREA +/-SF: 192,099.6  +/-AC: 4.410    +/-FF: 956.52

TOPOGRAPHY: GENTLY SLOPING PARKING: ADEQUATE    ACCESS: EXCELLENT

BUILDING      GROSS AREA +/-SF: 50,575      # OF BUILDINGS: 1
              OFFICE AREA +/-SF: 13,676     SHIPPING DOCK: 2 DRIVE IN; 6 TAILG.
              FACTORY AREA +/-SF: 36,899    HEIGHT CLEARANCE: 19
              WAREHOUSE AREA +/-SF: 0       RAIL: NONE
              ELECTRICAL: 6,000AMPS         EFF. AGE: 8
              SPRINKLERED: WET              CONDITION: GOOD
              MISCELLANEOUS: NONE

PRICE/SF BUILDING $31.14

REMARKS BUILDING BOUGET FOR OWNER OCCUPANCY.  BUILDING CAN BE EXPANDED BY
        APPROXIMATELY 20,000+/-SF.  100% AIR CONDITIONED.

Comparable #1: 36 Jytek Road, Leominster, MA

June 14, 2002 sale of a 32,200±SF warehouse building on a
3.219±AC site for $1,100,000 ($34.16/SF).  The property was
bought for owner occupancy.

Upward adjustment:

Date Of Sale: The comparable sold June 14, 2002.  Industrial
properties have increased in value since the date of sale due to
improvement in the real estate market.

Rail: The comparable doesn't have rail available; the subject has
the availability of rail.  Industrial properties with the
availability of rail tend to sell for a higher price/SF due to a
greater number of potential buyers.

Building Condition: The comparable is in average condition,
inferior to the good condition of the subject.

Ceiling Clearance: The comparable has ceiling clearance of
16±FT.  The subject has clearance of mostly 19±FT; there is an
additional 3,900±SF that is 38±FT high.

Type of Building: The comparable is a lower quality warehouse
building, inferior to the subject good quality manufacturing
building.  Manufacturing buildings tend to sell for a higher
price/SF than warehouse buildings due to higher buildout costs.

Office Space: The comparable has 2% office space; the subject has
26% office.  Industrial properties with a higher percentage of
office tend to sell for a higher price/SF due to higher buildout
costs.

Expansion Potential: The comparable does not appear to have
expansion potential; the subject has expansion potential of an
estimated 34,800±SF.

Downward adjustment:

Building Size: The comparable is 32,200±SF; the subject is
53,844±SF.  Smaller buildings tend to sell for a higher price/SF
due to a greater number of potential buyers.

The net adjustment is upward.


Comparable #2: 16 Chocksett Road, Sterling, MA

March 14, 2003 sale of a 78,757±SF warehouse building on a
7.76±AC site for $2,900,000 ($36.82/SF).  The property was bought
for owner occupancy.

Upward adjustment:

Date Of Sale: The comparable sold March 14, 2003.  Industrial
properties have increased in value since the date of sale due to
improvement in the real estate market.

**Rail**: The comparable doesn't have rail available; the subject has the availability of rail.

**Building Size**:  The comparable is 78,757±SF; the subject is 53,844±SF.

**Office Space**: The comparable has 11% office space; the subject has 26% office.

**Type of Building**: The comparable was a lower quality warehouse building at the time of sale, inferior to the subject good quality manufacturing building.

Downward adjustment:

**Ceiling Clearance**:  The comparable has ceiling clearance of 30±FT.  The subject has clearance of mostly 19±FT; there is an additional 3,900±SF that is 38±FT high.

The net adjustment is upward.

**Comparable #3: 1776 Locke Drive, Leominster, MA**

May 9, 2003 sale of a 64,445±SF warehouse building on a 4.07±AC site for $2,000,000 ($31.03/SF).  The property was bought for investment purposes at an approximately 10.2% overall capitalization rate.

Upward adjustment:

**Date Of Sale**:  The comparable sold May 9, 2003.  Industrial properties have increased in value since the date of sale due to improvement in the real estate market.

**Rail**: The comparable doesn't have rail available; the subject has the availability of rail.

**Ceiling Clearance**:  The comparable has ceiling clearance of 16±FT.  The subject has clearance of mostly 19±FT; there is an additional 3,900±SF that is 38±FT high.

**Office Space**: The comparable has 10% office space; the subject has 26% office.

**Building Condition**: The comparable is in average condition, inferior to the good condition of the subject.

**Type of Building**: The comparable was a lower quality warehouse building, inferior to the subject good quality manufacturing building.

**Expansion Potential**:  The comparable does not appear to have expansion potential; the subject has expansion potential of an estimated 34,800±SF.

Downward adjustment:

None are indicated.

The net adjustment is upward.

## Comparable #4: 151 Suffolk Lane, Gardner, MA

June 13, 2003 sale of a 67,200±SF manufacturing building on a 6.829±AC site for $2,495,000 ($37.13/SF). The property was bought for investment purposes at an approximately 11.5% overall capitalization rate.

Upward adjustment:

**Office Space**: The comparable has 14% office space; the subject has 26% office.

**Rail**: The comparable doesn't have rail available; the subject has the availability of rail.

**Location**: The comparable is in Gardner. Industrial buildings in Gardner tend to sell for a lower price/SF than Lunenburg due to an inferior local economy.

Downward adjustment:

**Building Condition**: The comparable was in excellent condition, superior to the good condition of the subject.

**Ceiling Clearance**: The comparable has ceiling clearance of 24±FT. The subject has clearance of mostly 19±FT; there is an additional 3,900±SF that is 38±FT high.

The net adjustment is zero.

## Comparable #5: 20 Authority Drive, Fitchburg, MA

May 7, 2004 sale of a 50,575±SF manufacturing building on a 4.41±AC site for $1,575,000 ($31.14/SF). The property was bought for owner occupancy.

Upward adjustment:

**Market Conditions**: According to James Stubblebine, broker, the seller was in duress in this transaction. The property was on the market with an asking price of $1,900,000. Approximately 1 year prior to the sale, there was a previous agreement with a company called Cycles, at a price of $1,900,000, however, the sale fell through when another property became available closer to Cycles, which they purchased.

**Rail**: The comparable doesn't have rail available; the subject has the availability of rail.

-51-

Downward adjustment:

None are indicated.

The net adjustment is upward.

After adjustments, the estimated market value of the subject is $45.00/SF.

| VALUE/SF | x | SIZE | = | VALUE |
|----------|---|------|---|-------|
| $45.00 | | 53,844±SF | | $2,422,980 |
| | | Rounded | | $2,425,000 |

As of September 27, 2004, the estimated market value of the property by the sales comparison approach is:

### TWO MILLION FOUR HUNDRED TWENTY-FIVE THOUSAND DOLLARS
### $2,425,000

## ESTIMATE OF VALUE BY THE INCOME CAPITALIZATION APPROACH

According to The Appraisal of Real Estate, published by the Appraisal Institute, the income capitalization approach is based on the principle of anticipation, which, for income producing properties, translates into present worth all rights to future benefits accruing to ownership.

Of the many capitalization techniques for converting an income stream into an estimate of market value, direct capitalization and yield capitalization are the most frequently used. Each is based on different assumptions concerning the relationship between expected earnings and value.

Direct capitalization, as defined on page 83 of the 4th edition of The Dictionary of Real Estate Appraisal (Chicago: Appraisal Institute, 2002), is:

1. *A method used to convert an estimate of a single years's income expectancy into an indication of value in one direct step - either by dividing the income estimate by an appropriate income rate or by multiplying the income estimate by an appropriate factor.*

2. *A capitalization technique that employs capitalization rates and multipliers extracted from sales. Only the first years income is considered. Yield and value change are implied, but not identified.*

Yield capitalization is defined in the same text on page 315: *"The capitalization method used to convert future benefits into present value by discounting each future benefit at an appropriate yield rate or by developing an overall rate that explicitly reflects the investment's income pattern, value change, and yield rate".*

Of these two capitalization techniques for converting an income stream into an estimate of market value, direct capitalization was selected as the most appropriate technique for the valuation of this property.

This technique can be used to convert a single year's income, that is, a stable income stream, into an estimate of value using an overall capitalization rate.

The value of the building and supporting land area will be estimated first. To be added to the value of the income stream is the value of the excess land.

Market rents/leases, or asking rents, of other comparable buildings were researched in Lunenburg and the market area. Research revealed two 2002 lease comparables in Leominster, a 2003 lease comparable in Ayer, a pending lease comparable in Shirley and a pending lease comparable in Shrewsbury.

As noted in the data summaries of the lease comparables used, each is leased triple net (lessee pays utilities, tax, insurance, and interior and grounds maintenance). The terms projected for the subject are triple net.

Following are the data summaries of the comparables used in comparison to the subject and a narrative explanation of the adjustments made to each. A location map of the comparables is included in the Addendum.

## LEASE DATA # 1



ADDRESS      TOWN: LEOMINSTER             STATE: MASSACHUSETTS
STREET: 175 PIONEER DRIVE

STATE CLASS CODE: 400           TYPE OF PROPERTY: INDUSTRIAL
USE: MANUFACTURING
ZONING: INDUSTRIAL

LESSOR: TEO VITTORIOSO          VERIFIED: BROKER (JB) 6/02

LESSEE: STAR LEOMINSTER, INC.

DATE SIGNED: 01/01/02           LENGTH OF LEASE: 5 YEARS
EXPIRATION DATE: 12/31/06
YEARLY INCOME $450,000 YEAR 1; 1% ANNUAL INCREASES

TERMS: $4.50/SF YEAR 1; 1% ANNUAL INCREASES

LEASE OR TAW: LEASE

AREA LEASED +/- SF: 100,000

BUILDING AGE: 32              CONDITION: GOOD

SERVICES PAID BY TENANT OR LESSOR

       TAXES: LESSEE        INSURANCE: LESSEE        HEAT: LESSEE

       WATER: LESSEE        MAINTENANCE: LESSEE      OTHER: LESSEE

COMMON AREA CHARGE: LESSEE

REMARKS TENANT HAS 10,000 SF OF OFFICE AND 18-20 FT CEILING CLEARANCE.

## LEASE DATA # 2



ADDRESS     TOWN: LEOMINSTER         STATE: MASSACHUSETTS
             STREET: 7 NEW LANCASTER ROAD (ROUTE 117)

STATE CLASS CODE: 400            TYPE OF PROPERTY: INDUSTRIAL

ZONING: INDUSTRIAL             USE: MANUFACTURING

LESSOR: MOHAWK/CDT INC.         VERIFIED: BROKER (JB) 6/02

LESSEE: DT PACKAGING SYSTEMS

DATE SIGNED: 07/01/02           LENGTH OF LEASE: 5 YEARS
                            EXPIRATION DATE: 06/30/07

YEARLY INCOME $510,000 YEAR 1; CPI INCREASES YEARS 2-5

TERMS: $5.00/SF YEAR 1; CPI INCREASES YEARS 2-5

LEASE OR TAW: LEASE

AREA LEASED +/- SF: 102,000

BUILDING AGE: 18 YEARS          CONDITION: GOOD

SERVICES PAID BY TENANT OR LESSOR

      TAXES: LESSEE        INSURANCE: LESSEE        HEAT: LESSEE

      WATER: LESSEE        MAINTENANCE: LESSEE     OTHER: LESSEE

COMMON AREA CHARGE: LESSEE

REMARKS BUILDING HAS CEILING CLEARANCE OF 18-20 FT AND 4,800 SF OF OFFICE.
        THIS IS A SUBLEASE.
        BUILDING IS 50% AIR CONDITIONED.

## LEASE DATA # 3



ADDRESS     TOWN: AYER                          STATE: MASSACHUSETTS
            STREET: 95 FITCHBURG ROAD (ROUTE 2A)

STATE CLASS CODE: 400                  TYPE OF PROPERTY: INDUSTRIAL
                                       USE: WAREHOUSE
ZONING: INDUSTRIAL

LESSOR: MERRIMACK WAREHOUSE NOMINEE TRUST VERIFIED: LESSOR (JB) 1/04

LESSEE: FOX PACKAGING

DATE SIGNED: 06/01/03                   LENGTH OF LEASE: 5 YEARS
                                        EXPIRATION DATE: 05/31/08
YEARLY INCOME $200,726.00 FIXED

TERMS: $4.75/SF FIXED

LEASE OR TAW: LEASE

AREA LEASED +/- SF: 42,258

BUILDING AGE: 14-18                     CONDITION: GOOD

SERVICES PAID BY TENANT OR LESSOR

        TAXES: LESSEE        INSURANCE: LESSEE           HEAT: LESSEE

        WATER: LESSEE        MAINTENANCE: LESSEE         OTHER: LESSEE

COMMON AREA CHARGE: LESSEE

REMARKS TENANT HAS 26-32' CLEARANCE AND ABOUT 2% OFFICE.

LEASE DATA # 4



ADDRESS    TOWN: SHIRLEY                    STATE: MASSACHUSETTS
           STREET: PATTERSON ROAD

STATE CLASS CODE: 400                       TYPE OF PROPERTY: INDUSTRIAL
                                            USE: WAREHOUSE
ZONING: INDUSTRIAL

LESSOR: JANAS PAUL, LLC                      VERIFIED: BROKER (JB) 10/04

LESSEE: INNOVATIVE MARKETING SOLUTIONS

DATE SIGNED: 11/01/04                        LENGTH OF LEASE: 6 YEARS
                                            EXPIRATION DATE: 10/31/10
YEARLY INCOME $190,995 YR. 1; $200,090 YRS. 2-3; $209,185 YRS. 4-6

TERMS: $5.25/SF YR. 1; $5.50/SF YRS. 2-3; $5.75/SF YRS. 4-6

LEASE OR TAW: LEASE

AREA LEASED +/- SF: 36,380

BUILDING AGE: NEW                           CONDITION: EXCELLENT

SERVICES PAID BY TENANT OR LESSOR

        TAXES: LESSEE        INSURANCE: LESSEE              HEAT: LESSER

        WATER: LESSEE        MAINTENANCE: LESSEE            OTHER: LESSEE

COMMON AREA CHARGE: LESSEE

REMARKS PROPOSED LEASE OF A NEW BUILDING.  THE SPACE TO INCLUDE 4,000 SF OF
        OFFICE.  CEILING CLEARANCE APPROXIMATELY 30 FT.

LEASE DATA # 5



ADDRESS     TOWN: SHREWSBURY       STATE: MASSACHUSETTS
STREET: 28 BOWDITCH DRIVE

STATE CLASS CODE: 400            TYPE OF PROPERTY: INDUSTRIAL
USE: MANUFACTURING
ZONING: LIMITED INDUSTRIAL

LESSOR: LYNNE F. BERLYN, TRUSTEE    VERIFIED: BROKER (JB) 8/04

LESSEE: METSO AUTOMATION

DATE SIGNED: 11/01/04          LENGTH OF LEASE: 5 YEARS
EXPIRATION DATE: 10/31/09
YEARLY INCOME $244,188 YEAR 1 FOLLOWED BY ANNUAL CPI INCREASES

TERMS: $5.95/SF YEAR 1 FOLLOWED BY ANNUAL CPI INCREASES

LEASE OR TAW: LEASE

AREA LEASED +/- SF: 41,040

BUILDING AGE: 27 YEARS          CONDITION: GOOD

SERVICES PAID BY TENANT OR LESSOR

      TAXES: LESSEE      INSURANCE: LESSEE      HEAT: LESSEE

      WATER: LESSEE      MAINTENANCE: LESSEE    OTHER: LESSEE

COMMON AREA CHARGE: LESSEE

REMARKS PENDING LEASE OF AN UPSCALE MANUFACTURING BUILDING.  THERE IS
4,500 SF OF OFFICE SPACE AND 18 FT CLEARANCE.

**Lease Data #1: 175 Pioneer Drive, Leominster, MA**

January 1, 2002 lease of a 100,000±SF manufacturing building for
5 years at $4.50/SF in Year 1, followed by annual 1% increases,
triple net.

Upward adjustment

**Date of Lease**: The comparable was leased January 1, 2002.
Industrial lease rates have increased since the date of lease due
to improvement in the real estate market.

**Rail**: The comparable doesn't have rail available; the subject has
the availability of rail.

**Building Size**:  The comparable is 100,000±SF; the subject is
53,844±SF.

**Percentage Office**: The comparable has 10% office space, inferior
to the subject with 26% office space.

Downward adjustment:

None are indicated.

The net adjustment is upward.

**Lease Data #2: 7 New Lancaster Road (Route 117), Leominster, MA**

July 1, 2002 lease of a 102,000±SF manufacturing building for 5
years at $5.00/SF in Year 1, followed by annual CPI increases,
triple net.

Upward adjustment

**Date of Lease**: The comparable was leased July 1, 2002. Industrial
lease rates have increased since the date of lease due to
improvement in the real estate market.

**Rail**: The comparable doesn't have rail available; the subject has
the availability of rail.

**Building Size**:  The comparable is 102,000±SF; the subject is
53,844±SF.

**Percentage Office**: The comparable has 5% office space, inferior
to the subject with 26% office space.

Downward adjustment:

None are indicated.

The net adjustment is upward.

### Lease Data #3: 95 Fitchburg Road (Route 2A), Ayer, MA

June 1, 2003 lease of a 42,258±SF warehouse space for 5 years at $4.75/SF, triple net.

Upward adjustment

**Date of Lease**: The comparable was leased June 1, 2003. Industrial lease rates have increased since the date of lease due to improvement in the real estate market.

**Rail**: The comparable doesn't have rail available; the subject has the availability of rail.

**Type of Building**: The comparable is a lower quality warehouse building, inferior to the subject good quality manufacturing building.

**Percentage Office**: The comparable has 2% office space, inferior to the subject with 26% office space.

Downward adjustment:

**Ceiling Clearance**: The comparable has ceiling clearance of 26±FT to 32±FT. The subject has clearance of mostly 19±FT; there is an additional 3,900±SF that is 38±FT high.

The net adjustment is upward.

### Lease Data #4: Patterson Road, Shirley, MA

Pending lease of a 36,380±SF warehouse space for 6 years at $5.25/SF in Year 1; $5.50/SF in Years 2-3 and $5.75/SF in Years 4-6, triple net.

Upward adjustment

**Type of Building**: The comparable is a lower quality warehouse building, inferior to the subject good quality manufacturing building.

**Rail**: The comparable doesn't have rail available; the subject has the availability of rail.

**Percentage Office**: The comparable has 11% office space, inferior to the subject with 26% office space.

Downward adjustment:

**Ceiling Clearance**: The comparable has ceiling clearance of 30±FT. The subject has clearance of mostly 19±FT; there is an additional 3,900±SF that is 38±FT high.

**Condition**: The comparable will be new and in excellent condition, superior to the good condition of the subject.

**Building Size**:  The comparable is 36,380±SF; the subject is 53,844±SF.

The net adjustment is zero.

### Lease Data #5: 28 Bowditch Drive, Shrewsbury, MA

Pending lease of a 41,040±SF manufacturing building for 5 years at $5.95/SF in Year 1, followed by annual CPI increases, triple net.

Upward adjustment

**Rail**: The comparable doesn't have rail available; the subject has the availability of rail.

**Percentage Office**: The comparable has 11% office space, inferior to the subject with 26% office space.

Downward adjustment:

**Location**: The comparable is in Shrewsbury.  Industrial buildings in Shrewsbury tend to rent for a higher rent/SF than Lunenburg due to a superior local economy and road network.

The net adjustment is zero.

After adjustments, the estimated market rent of the subject building is $5.75/SF, triple net.

### Potential Gross Income

The potential gross income (PGI) is $309,603 (53,844±SF x $5.75/SF = $309,603).

**Vacancy and Collection Loss**:  Expenses relative to vacancy and collection loss will be incurred during a typical term of ownership.  In estimating vacancy and collection loss for the subject, consideration is given to the amount of comparable industrial space on the market, approximately 12.4% according to a vacancy study conducted by the Foster Company.

The subject is a good quality manufacturing building, assumed to be in good condition and would likely be in good demand.  After all factors are considered, vacancy is estimated at 8%, collection loss is estimated at an additional 2%, or a combined vacancy and collection loss of 10%.

### Effective Gross Income

Deducting the estimated 10% vacancy and collection loss from the PGI results in an effective gross income (EGI) of $278,643.

## Operating Expenses

**Management**: As the building is suited for a single tenant, management is estimated at 3% of EGI. This estimate is based on input from representatives of management companies.

**Structural Maintenance**: The amount expended for structural maintenance depends on the condition of the building. Given that the building is in assumed good condition, this is estimated at 3% of EGI.

**Reserves**: The amount estimated for reserves for replacement of short-lived items is 2% of EGI.

**Professional Fees**: Professional fees include legal and accounting. In buildings like the subject, this expense would be minimal. In this analysis, $500 is considered a reasonable estimate.

**Real Estate Taxes**: The tenant would be responsible for tax expense; the owner would be responsible for tax related to vacant space. The estimated tax expense related to just Lot 1B (after pro-rating the land assessment) is $24,902 (rounded); the owners share of the expense would be $2,490 ($24,902 x .10 = $2,490).

**Insurance**: The tenant would be responsible for insurance expense; the owner would be responsible for insurance related to vacant space. Based on expenses obtained for other properties, insurance is estimated at $8,000; the owners share of the expense would be $800 ($8,000 x .10 = $800).

**Miscellaneous**: The amount estimated for miscellaneous items is 1% of EGI, which includes grounds maintenance and minimal utility expenses to cover vacancy.

**Total Expenses**: Expenses total $28,867.

### Net Operating Income

Deducting the operating expenses from EGI, the net operating income (NOI) projected is $249,776.

| | | |
|---|---|---|
| Potential gross income (PGI) | | $309,603 |
| less vacancy and credit loss | ( $30,960) | |
| Effective gross income (EGI) | | 278,643 |
| less: management (3%) | ( 8,359) | |
| structural maintenance (3%) | ( 8,359) | |
| reserves (2%) | ( 5,573) | |
| professional fees | ( 500) | |
| real estate taxes | ( 2,490) | |
| insurance | ( 800) | |
| miscellaneous (1%) | ( 2,786) | |
| Total expenses | ($ 28,867) | |
| Net operating income (NOI) | | $249,776 |

-62-

## Overall Capitalization Rate

An overall capitalization rate of 10.2% was abstracted from Comparable Sale #3 and 11.5% for Comparable Sale #4.

The band of investment technique was also used to calculate an overall capitalization rate.

Band of investment is defined on Page 25 of the 4th edition of *The Dictionary of Real Estate Appraisal* (Chicago: Appraisal Institute, 2002) as: "*A technique in which the capitalization rates attributed to components of a capital investment are weighted and combined to derive a weighted-average rate attributable to the total investment.*"

Band of investment analysis is comprised of two components:

1.  Mortgage composition (principal and interest), the typical financing for this type of investment.

2.  Equity contribution and yield required by an equity investor.

In order to calculate an overall capitalization rate, it is necessary to determine the rate of return expected by an investor.

Following are examples of returns being received from other types of investments published in the Money Rates column of *The Wall Street Journal* on September 23, 2004.

| | |
|---|---|
| Prime rate | 4.75% |
| Treasury Bills (13 weeks) | 1.69% |
| Treasury Bills (26 weeks) | 1.87% |
| Fannie Mae 30 year mortgages | 5.40% |
| Freddie Mac 30 year mortgages | 5.37% |
| Corporate Bonds | |
| 1-10 yr   high quality | 3.58% |
| medium quality | 4.12% |
| High-yield corporates | 7.24% |

Considering the rates received on the types of investments listed previously, the risk inherent in investment in real estate, the increased vacancy in the area, and the good quality and assumed good condition of the subject, the equity rate estimated is 10%. This is the rate of return used in the band of investment technique to develop the overall capitalization rate.

Another component of this technique required to calculate the overall capitalization rate is mortgage terms available. Based on conversations with loan officers, it was concluded that the most probable mortgage terms are a 75% loan-to-value ratio at 6.00% interest amortized over a 15-year period with a 3-5 year call.

Based on the mortgage terms estimated, the mortgage constant for the subject would be .1012628; the equity requirement, 25%; the rate of return on equity, 10%; for a projected holding period of 7 years.

Following are the calculations used in developing the overall capitalization rate by band of investment analysis.

| LOAN TO VALUE RATIO<br>.75 | x | MORTGAGE CONSTANT<br>.1012628 | = | .075947 |
|---|---|---|---|---|
| EQUITY REQUIREMENT<br>.25 | x | RATE OF RETURN<br>EXPECTED<br>.10 | = | .025000 |
| | | Total | = | .100947 |
| | | Rounded | | .1000 |

In addition to the types of investments above, the Third Quarter 2004, Korpacz Real Estate Investor Survey was reviewed. Overall capitalization rates for the noninstitutional-grade national industrial market ranged from 7.25% to 12.5%, with an average of 9.52%.

Overall capitalization rates of 10.2% and 11.5% were obtained from the market. A rate of 10% was obtained from use of the band of investment technique and a rate of 9.52% was obtained from Korpacz. A rate of 10.0% was concluded reasonable for the subject given the risk associated with the vacancy in the area but also the good quality and assumed good condition of the building.

Dividing the projected NOI by a 10.0% overall capitalization rate yields the estimated market value of the building and supporting land area.

| NOI<br>$249,776 | / | CAPITALIZATION RATE<br>.10<br>Rounded | = | VALUE<br>$2,497,760<br>$2,500,000 |
|---|---|---|---|---|

## Excess Land Value

As previously detailed, the owners were proposing to expand the building by 34,800±SF, however, it was never completed. The expansion would have maximized the use of the site. The potential expansion represents 39% of the total potential building area (34,800±SF / 88,644±SF = 39%).

The excess land value is estimated to be 39% of the total land value, or $202,800 ($520,000 x .39 = $202,800), rounded to $205,000.

The total value of the subject by the income capitalization approach is calculated as follows:

| | |
|---|---|
| Value of Income Stream | $2,500,000 |
| Excess Land Value | $   205,000 |
| Total | $2,705,000 |

As of September 27, 2004, the estimated market value of the subject by the income capitalization approach is:

**TWO MILLION SEVEN HUNDRED FIVE THOUSAND DOLLARS**
**$2,705,000**

### RECONCILIATION OF VALUE INDICATIONS INTO FINAL ESTIMATE

The estimated site value of Lot 1A by the sales comparison approach based on a comparison to 4 comparable sales is $305,000. The estimated site value of Lot 1B using the same sales is $520,000.

The estimated value of Lot 1B by the cost approach is $2,850,000. This approach is considered a weaker indicator of value because this type property isn't generally purchased based on the cost of construction less depreciation, plus land value.

The market value of Lot 1B estimated by the sales comparison approach based on a comparison of 5 sales comparables is $2,425,000. This is considered a good indicator of value because most industrial properties are owner occupied in this market area.

The market value of the property estimated by the income capitalization approach based on a comparison of 5 lease comparables is $2,705,000. This is considered a weaker indicator of value given the predominance of owner occupied properties in the market area.

The greatest weight was placed on the sales comparison approach.

As of September 25, 2004, the final estimated market values are:

**LOT 1A**
**THREE HUNDRED FIVE THOUSAND DOLLARS**
**$305,000**

**LOT 1B**
**TWO MILLION FOUR HUNDRED TWENTY-FIVE THOUSAND DOLLARS**
**$2,425,000**

*Joel C. Buthray*

Joel A. Buthray, MAI
Certified General
Real Estate Appraiser
Commonwealth of MA #929

## MARKETING AND EXPOSURE PERIOD

Factors to consider in estimating a marketing period include the economic climate and the state of the real estate market, and current lending policies.

Based on the assumption that the subject property is free and unencumbered, and marketed at the value estimated in this report, the marketing and exposure period estimated for the subject is 6 months.

## CERTIFICATION

1.  The statements of fact contained in this report are true and accurate.

2.  The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.

3.  I have no bias with respect to the property that is the subject of this report or the parties involved with this assignment.

4.  My engagement in this assignment was not contingent upon developing or reporting predetermined results.

5.  My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

    This appraisal assignment was not based on a requested minimum valuation, a specific valuation, or the approval of a loan.

6.  My analyses, opinions, and conclusions were developed, and this report has been prepared in conformity with the Uniform Standards of Professional Appraisal Practice (USPAP) of the Appraisal Foundation, and with the Code of Professional Ethics and Standards of Professional Appraisal Practice of the Appraisal Institute.

7.  I certify that the use if this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.

8.  The appraiser has complied with the competency provision of USPAP and has completed valuations of properties such as the subject within the past two years.

9.  No appreciable professional assistance was provided to the appraiser who prepared this report other than those whose signatures are affixed to this Certification.

10. The property was inspected by the undersigned on 09/25/04.

JOEL A. BUTHRAY, MAI
Certified General Real Estate Appraiser
Commonwealth of Massachusetts #929

11. As of the date of this report, I, Joel A. Buthray, have completed the requirements of the continuing education program of the Appraisal Institute.

JOEL A. BUTHRAY, MAI
Certified General Real Estate Appraiser
Commonwealth of Massachusetts #929

ADDENDUM

K02059P6250

## EXHIBIT A

A certain tract of land, containing 17.151 acres, situated in Lunenburg, Mass. on the southeasterly side of Pioneer Drive and the southwesterly side of Leominster-Shirley Road, and being more particularly described as follows:

BEGINNING at the most westerly corner thereof, at a point on the southeasterly side of Pioneer Drive at land of Teodorico Vittorioso et al and at the Town Line between Lunenburg and Leominster;

THENCE northeasterly by a curve to left, radius 2530 feet, for a distance measured on the arc of 757.78 feet by the southeasterly side of Pioneer Drive to a point of tangent;

THENCE N 14 -20' E - 224.93 feet by the southeasterly side of Pioneer Drive to a point of curve;

THENCE northeasterly to southeasterly by a curve to the right, radius 50 feet, for a distance measured on the arc of 92.56 feet by the southeasterly side of Pioneer Drive to a point of tangent on the southwesterly side of Leominster-Shirley Road;

THENCE S 59 -36' -15" E. 388.93 feet by the southwesterly side of Leominster-Shirley Road to a point of curve;

THENCE southeasterly by a curve to the right, radius 2000 feet, for a distance measured on the arc of 189.57 feet by the southwesterly side of Leominster-Shirley Road to a point of tangent;

THENCE S 54 -10' -25" E - 455.78 feet by the southwesterly side of Leominster-Shirley Road to a corner at land of the Massachusetts Bay Transit Authority;

THENCE southwesterly by a curve to the left radius 1991.33 feet, more or less, for a distance measured on the arc of 289.62 feet, more or less, by last named land to a point of compound curvature;

THENCE southwesterly by a curve to the left, radius 2931.86 feet, more or less, for a distance measured on the arc of 732.52 feet, more or less, by last-named land to a corner at the Town Line between Lunenburg and Leominster;

THENCE N 64 -00' -55" W 525.90 feet by the Town Line and by land of the Massachusetts Bay Transit Authority and land of Teodorico Vittorioso et al to the point of beginning.

BEING shown on a plan entitled "Plan of Land in Lunenburg, Mass. owned by Associates Realty Trust" dated April 4, 1991 prepared by Whitman & Bingham Assoc. - Reg. Engineers & Surveyors, 305 Whitney Street, Leominster, Mass. 01453 and recorded as Plan Book _748_, Plan 10.

ATTEST NO WOR JOHN B. McLAUGHLIN, REGISTER

SEE
INSTRUMENT
B. 3068
P. 194

SEE
INSTRUMENT
B. 3075
P. 177

MASSACHUSETTS QUITCLAIM DEED SHORT FORM (INDIVIDUAL) 801

James J. Piermarini and Gerald J. Crowley, Trustees of
Associates Realty Trust, A Massachusetts trust u/d/t dated December 26, 1967 and
recorded with the Worcester Northern District Registry of Deeds in Book 1017, Page 446,
as amended

of 15 Mohawk Drive, Leominster, Worcester                    County, Massachusetts,

WITNESSETH, for consideration paid, and in full consideration of Two Hundred Thousand and 00/100
Dollars ($200,000.00)
grant to The Gitto Corporation, a Massachusetts corporation having a usual place
of business at Nancy Court, Leominster, Massachusetts                with quitclaim covenants

the land in Lunenburg, Massachusetts as described in Exhibit A attached hereto.

[Description and encumbrances, if any]

Witness .our.. hand a   and seal. this   9th   day of   April   19 21.

James   Piermarini,   Trustee
Gerald J. Crowley   Trustee

The Commonwealth of Massachusetts

Worcester   ss.                    April   9,   1941

Then personally appeared the above named James J. Piermarini and Gerald J. Crowley, Trustees
of Associates Realty Trust u/d/t dated December 26, 1967 and recorded Book 1017, Page 446,
and acknowledged the foregoing instrument to be   their   free act and deed before me

Marcy Rand McNabee   Notary Public — Justice of the Peace

My commission expires   6/27   19 35

My Commission Expires January 27, 1976

[Joint Tenants — Tenants in Common.]

[AS AMENDED BY CHAPTER 497 OF 1969
Indorsed upon it the full name, residence and post office address of the grantee
and a recital of the amount of the full consideration in dollars or the nature of the other consideration therefor, if not delivered
for a specific monetary sum. The full consideration shall mean the total price for the conveyance without deduction for any liens or
encumbrances assumed by the grantee or remaining thereon. All such endorsements and recitals shall be recorded as part of the deed.
Failure to comply with this section shall not affect the validity of any deed. No register of deeds shall accept a deed for recording unless
it is in compliance with the requirements of this section.]

Leominster-Shirley Road and Pioneer Drive, Lunenburg, MA

#02059P6249

APR 9 3:21 PM '91

TAX   CASH   STEWART32 34174   EXCISE TAX   $912.00   $912.00   04/09/91   BOOK FEE 21   MARY UMINA

# LAND SALE COMPARABLES



LAND SALE COMPARABLE #1

LAND SALE COMPARABLE #2

LAND SALE COMPARABLE #3

LAND SALE COMPARABLE #4

SUBJECT PROPERTY

Aag 12.00
ue Oct 12 09:06 2004
cale 1:125,000 (at center)

2 Miles

2 KM

| | | |
|---|---|---|
| ~~~ Local Road | +—+— Railroad | ♠ Park/Reservation |
| —— Major Connector | ☐ Point of Interest | Exit/Gas |
| ~~~ State Route | ♦ Small Town | Exit/Lodging |
| ⊼ Rest Area | ◇ Large City | Exit/Food |
| ~~~ Trail | —— Airfield | Exit/Other Services |
| Interstate/Limited Access | △ Summit | Locale |
| ☐ Exit | ▽ Geographic Feature | Military Airport |
| Utility/Pipe | ✛ Hospital | Public Airport |



# BUILDING SALE COMPARABLES



# LEASE COMPARABLES



ZONE B

ZONE C

ACCESS ROAD

SHIRLEY ROAD

BOSTON AND MAINE RAILROAD

SUBJECT

100-Year Flood Boundary
Zone Designations*

100-Year Flood Boundary
500-Year Flood Boundary

Base Flood Elevation Line
With Elevation in Feet**

Base Flood Elevation in Feet
Where Uniform Within Zone**          (EL 987)

Elevation Reference Mark          RM7x

Zone D Boundary

River Mile          •M1.5

**Referenced to the National Geodetic Vertical Datum of 1929

## EXPLANATION OF ZONE DESIGNATIONS

| ZONE | EXPLANATION |
|---|---|
| A | Areas of 100-year flood; base flood elevations and flood hazard factors not determined. |
| AO | Areas of 100-year shallow flooding where depths are between one (1) and three (3) feet; average depths of inundation are shown, but no flood hazard factors are determined. |
| AH | Areas of 100-year shallow flooding where depths are between one (1) and three (3) feet; base flood elevations are shown, but no flood hazard factors are determined. |
| A1-A30 | Areas of 100-year flood; base flood elevations and flood hazard factors determined. |
| A99 | Areas of 100-year flood to be protected by flood protection system under construction; base flood elevations and flood hazard factors not determined. |
| B | Areas between limits of the 100-year flood and 500-year flood; or certain areas subject to 100-year flooding with average depths less than one (1) foot or where the contributing drainage area is less than one square mile; or areas protected by levees from the base flood. (Medium shading) |
| C | Areas of minimal flooding. (No shading) |
| D | Areas of undetermined, but possible, flood hazards. |
| V | Areas of 100-year coastal flood with velocity (wave action); base flood elevations and flood hazard factors not determined. |
| V1-V30 | Areas of 100-year coastal flood with velocity (wave action); base flood elevations and flood hazard factors determined. |

### NOTES TO USER

Certain areas not in the special flood hazard areas (zones A and V) may be protected by flood control structures.

This map is for flood insurance purposes only; it does not necessarily show all areas subject to flooding in this community or all planimetric features outside special flood hazard areas.

For adjoining map panels, see separately printed Index To Map Panels.

Seminars
- Techniques of Income Property Appraising, 1/99
- Sales Comparison Approach, 11/98
- Investment Analysis, 10/98
- Maximizing the Value of an Appraisal Practice, 8/95
- Due Diligence, Contaminated Properties and the Real Estate Appraiser, 1/95
- Understanding Limited Appraisals and Reporting Options, 10/94
- Commercial Real Estate Appraisal Seminar, 7/90
- Cash Equivalency, 5/88
- Rates, Ratios and Reasonableness, 5/88

**PROFESSIONAL MEMBERSHIPS:**  Appraisal Institute, MAI #11326

**APPRAISAL EXPERIENCE:**  Appraisals and/or feasibility studies of diverse properties for governmental agencies, financial institutions, insurance companies, industrial corporations, attorneys, developers, relocation agencies and individual clients.

**TYPES OF PROERTIES APPRAISED:**  Residential, condominiums, sub-divisions, commercial, industrial, unimproved land, churches, apartments, shopping centers and motels.

**MEDIATION WORK:**  City of Worcester and Providence and Worcester Railroad

**PAST AREAS OF ASSIGNMENT:**  Massachusetts, Connecticut and Rhode Island

**CERTIFICATION:**  Certified General Real Estate Appraiser
Commonwealth of Massachusetts #929 to 05/03/05

**RECERTIFICATION:**  As of this date, I have completed the requirements of the continuing education program of the Appraisal Institute.



September 24, 2004


Joel Buthray, MAI
O'Hara-Buthray Associates, Inc.
11 Harvard Street
Worcester, MA    01609


RE:        140 Leominster-Shirley Road, Lunenburg, MA


Dear Joel:

This letter authorizes you to appraise the above-referenced real estate and to submit two
copies of the written appraisal report for the property to the Clinton Savings Bank in
accordance with the terms and conditions stated here and in accordance with the Uniform
Standards of Professional Appraisal Practice promulgated by the Appraisal Standards
Board. The report will conform with the code of ethics of the Appraisal Institute and the
Massachusetts Board of Real Estate Appraisers.

The written appraisal reports shall be in the Complete Self-Contained format, the value to
include the value of the excess land associated with the property. The purpose of the
appraisal is to estimate the value of the subject real estate. The report shall reflect current
market conditions with an effective date not later than your most recent inspection of the
real estate.

All correspondence regarding this appraisal assignment and the completed appraisal
reports shall be addressed to:

              David A. Harmon, Assistant Vice President
              Clinton Savings Bank
              200 Church Street
              P.O. Box 770
              Clinton, MA 01510


                                          Discover the rewards of making CSB your PFI.

OFFICE LOCATIONS

200 CHURCH STREET          563 MAIN STREET          1 MAIN STREET          35 CENTRAL STREET          231 WEST BOYLSTON STREET
CLINTON, MA 01510          BOLTON, MA 01740          STERLING, MA 01564          BERLIN, MA 01503          WEST BOYLSTON, MA 01583
TEL: 978-365-3700          TEL: 978-779-2857          TEL: 978-422-8133          TEL: 978-838-2206          TEL: 508-835-9944
FAX: 978-365-3710          FAX: 978-779-6295          FAX: 978-422-6130          FAX: 978-838-2601          FAX: 508-835-9088

TEL: Connecting all offices – 978-365-3700, 888-744-4272(4CSB)
FAX: Operations / Administration – 978-365-3719 / Lending – 978-365-3718          WEBSITE www.clintonsavings.com

Please note that the property owner, Tradex Corp., is not your client.

The agreed upon delivery time of the appraisal reports is three weeks. Your fee for appraisal services and two copies of the report is $3,500.

Please indicate your acceptance of this assignment by signing and returning the original copy of this letter to my attention at the Bank.

Sincerely,

David A. Harmon
Assistant Vice President

ACCEPTANCE:

Joel Buthray, MAI

_9/27/04_
Date

# QUALIFICATIONS OF APPRAISER

## Joel Buthray, MAI

**EMPLOYMENT:**

Partner, O'Hara-Buthray Associates, Inc.
*Actively involved in appraising, consulting and
reviewing appraisal reports*
Worcester, Massachusetts
September 1995 to date

Associate, Patrick McMahon Associates, Inc.
*Real Estate Appraiser*
Worcester, Massachusetts
November, 1986 to August, 1995

Guaranty Bank and Trust
*Collections/Credit Analyst*
Worcester, Massachusetts
April 13, 1983 to November 7, 1986

Household Finance Company
*Assistant Manager*
Worcester, Massachusetts
December, 1981 to April 10, 1983

**EDUCATION:**

Worcester State College
Worcester, Massachusetts
*Bachelor of Science
Major in Economics, Minor in Philosophy*

Appraisal Institute
- Business Practices and Ethics, 3/04
- Analyzing Distressed Real Estate, 2/04
- Analyzing Operating Expenses, 01/04
- Support Capitalization Rates, 10/02
- Appraising Income Properties, 4/01
- Commercial Highest and Best Use, 11/00
- Appraisal of Local Retail Properties, 3/99
- Standards of Professional Practice, Part C, 5/98
- Standards of Professional Practice, Part B, 3/95
- Standards of Professional Practice, Part A, 3/95
- Case Studies in Real Estate Valuation, 3/92
- Report Writing & Valuation, 9/91
- Capitalization Theory & Techniques, Part B, 10/90
- Capitalization Theory & Techniques, Part A, 5/90
- Basic Valuation Procedures, 6/89
- Standards of Professional Practice, 10/88
- Real Estate Appraisal Principles, 10/86

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

LASALLE BUSINESS CREDIT, LLC, f/k/a
LASSALE BUSINESS CREDIT, INC.,

        Plaintiff

    v.

CLINTON SAVINGS BANK,

        Defendant

Case No. 05-CV10268-DPW

**EXHIBIT C TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION
FOR A PRELIMINARY INJUNCTION**

Part 3 of 3

LEASE DATA # 2



ADDRESS     TOWN: LEOMINSTER          STATE: MASSACHUSETTS
            STREET: 7 NEW LANCASTER ROAD (ROUTE 117)

STATE CLASS CODE: 400            TYPE OF PROPERTY: INDUSTRIAL
                               USE: MANUFACTURING
ZONING: INDUSTRIAL

LESSOR: MOHAWK/CDT INC.         VERIFIED: BROKER (JB) 6/02

LESSEE: DT PACKAGING SYSTEMS

DATE SIGNED: 07/01/02          LENGTH OF LEASE: 5 YEARS
                            EXPIRATION DATE: 06/30/07
YEARLY INCOME $510,000 YEAR 1; CPI INCREASES YEARS 2-5

TERMS: $5.00/SF YEAR 1; CPI INCREASES YEARS 2-5

LEASE OR TAW: LEASE

AREA LEASED +/- SF: 102,000

BUILDING AGE: 18 YEARS          CONDITION: GOOD

SERVICES PAID BY TENANT OR LESSOR

        TAXES: LESSEE         INSURANCE: LESSEE         HEAT: LESSEE

        WATER: LESSEE         MAINTENANCE: LESSEE        OTHER: LESSEE

COMMON AREA CHARGE: LESSEE

REMARKS BUILDING HAS CEILING CLEARANCE OF 18-20 FT AND 4,800 SF OF OFFICE.
         THIS IS A SUBLEASE.
         BUILDING IS 50% AIR CONDITIONED.

## LEASE DATA # 3



ADDRESS      TOWN: AYER                       STATE: MASSACHUSETTS
STREET: 95 FITCHBURG ROAD (ROUTE 2A)

STATE CLASS CODE: 400                 TYPE OF PROPERTY: INDUSTRIAL
USE: WAREHOUSE
ZONING: INDUSTRIAL

LESSOR: MERRIMACK WAREHOUSE NOMINEE TRUST   VERIFIED: LESSOR (JB) 1/04

LESSEE: FOX PACKAGING

DATE SIGNED: 06/01/03               LENGTH OF LEASE: 5 YEARS
EXPIRATION DATE: 05/31/08
YEARLY INCOME $200,726.00 FIXED

TERMS: $4.75/SF FIXED

LEASE OR TAW: LEASE

AREA LEASED +/- SF: 42,258

BUILDING AGE: 14-18                CONDITION: GOOD

SERVICES PAID BY TENANT OR LESSOR

      TAXES: LESSEE        INSURANCE: LESSEE       HEAT: LESSEE

      WATER: LESSEE       MAINTENANCE: LESSEE     OTHER: LESSEE

COMMON AREA CHARGE: LESSEE

REMARKS TENANT HAS 26-32' CLEARANCE AND ABOUT 2% OFFICE.

## LEASE DATA # 4



**ADDRESS**    TOWN: SHIRLEY           STATE: MASSACHUSETTS
             STREET: PATTERSON ROAD

STATE CLASS CODE: 400           TYPE OF PROPERTY: INDUSTRIAL
                                     USE: WAREHOUSE
ZONING: INDUSTRIAL

LESSOR: JANAS PAUL, LLC          VERIFIED: BROKER (JB) 10/04

LESSEE: INNOVATIVE MARKETING SOLUTIONS

DATE SIGNED: 11/01/04           LENGTH OF LEASE: 6 YEARS
                                     EXPIRATION DATE: 10/31/10
YEARLY INCOME $190,995 YR. 1; $200,090 YRS. 2-3; $209,185 YRS. 4-6

TERMS: $5.25/SF YR. 1; $5.50/SF YRS. 2-3; $5.75/SF YRS. 4-6

LEASE OR TAW: LEASE

AREA LEASED +/- SF: 36,380

BUILDING AGE: NEW             CONDITION: EXCELLENT

SERVICES PAID BY TENANT OR LESSOR

      TAXES: LESSEE        INSURANCE: LESSEE        HEAT: LESSEE

      WATER: LESSEE        MAINTENANCE: LESSEE     OTHER: LESSEE

COMMON AREA CHARGE: LESSEE

REMARKS PROPOSED LEASE OF A NEW BUILDING.  THE SPACE TO INCLUDE 4,000 SF OF
       OFFICE.  CEILING CLEARANCE APPROXIMATELY 30 FT.

LEASE DATA # 5



ADDRESS        TOWN: SHREWSBURY              STATE: MASSACHUSETTS
               STREET: 28 BOWDITCH DRIVE

STATE CLASS CODE: 400                        TYPE OF PROPERTY: INDUSTRIAL
                                             USE: MANUFACTURING
ZONING: LIMITED INDUSTRIAL

LESSOR: LYNNE F. BERLYN, TRUSTEE             VERIFIED: BROKER (JB) 8/04

LESSEE: METSO AUTOMATION

DATE SIGNED: 11/01/04                        LENGTH OF LEASE: 5 YEARS
                                             EXPIRATION DATE: 10/31/09
YEARLY INCOME $244,188 YEAR 1 FOLLOWED BY ANNUAL CPI INCREASES

TERMS: $5.95/SF YEAR 1 FOLLOWED BY ANNUAL CPI INCREASES

LEASE OR TAW: LEASE

AREA LEASED +/- SF: 41,040

BUILDING AGE: 27 YEARS                       CONDITION: GOOD

SERVICES PAID BY TENANT OR LESSOR

        TAXES: LESSEE          INSURANCE: LESSEE              HEAT: LESSEE

        WATER: LESSEE          MAINTENANCE: LESSEE            OTHER: LESSEE

COMMON AREA CHARGE: LESSEE

REMARKS PENDING LEASE OF AN UPSCALE MANUFACTURING BUILDING.  THERE IS
        4,500 SF OF OFFICE SPACE AND 18 FT CLEARANCE.

**Lease Data #1: 175 Pioneer Drive, Leominster, MA**

January 1, 2002 lease of a 100,000±SF manufacturing building for
5 years at $4.50/SF in Year 1, followed by annual 1% increases,
triple net.

Upward adjustment

**Date of Lease**: The comparable was leased January 1, 2002.
Industrial lease rates have increased since the date of lease due
to improvement in the real estate market.

**Rail**: The comparable doesn't have rail available; the subject has
the availability of rail.

**Building Size**:  The comparable is 100,000±SF; the subject is
53,844±SF.

**Percentage Office**: The comparable has 10% office space, inferior
to the subject with 26% office space.

Downward adjustment:

None are indicated.

The net adjustment is upward.


**Lease Data #2: 7 New Lancaster Road (Route 117), Leominster, MA**

July 1, 2002 lease of a 102,000±SF manufacturing building for 5
years at $5.00/SF in Year 1, followed by annual CPI increases,
triple net.

Upward adjustment

**Date of Lease**: The comparable was leased July 1, 2002. Industrial
lease rates have increased since the date of lease due to
improvement in the real estate market.

**Rail**: The comparable doesn't have rail available; the subject has
the availability of rail.

**Building Size**:  The comparable is 102,000±SF; the subject is
53,844±SF.

**Percentage Office**: The comparable has 5% office space, inferior
to the subject with 26% office space.

Downward adjustment:

None are indicated.

The net adjustment is upward.

## Lease Data #3: 95 Fitchburg Road (Route 2A), Ayer, MA

June 1, 2003 lease of a 42,258±SF warehouse space for 5 years at $4.75/SF, triple net.

Upward adjustment

**Date of Lease**: The comparable was leased June 1, 2003. Industrial lease rates have increased since the date of lease due to improvement in the real estate market.

**Rail**: The comparable doesn't have rail available; the subject has the availability of rail.

**Type of Building**: The comparable is a lower quality warehouse building, inferior to the subject good quality manufacturing building.

**Percentage Office**: The comparable has 2% office space, inferior to the subject with 26% office space.

Downward adjustment:

**Ceiling Clearance**:  The comparable has ceiling clearance of 26±FT to 32±FT.  The subject has clearance of mostly 19±FT; there is an additional 3,900±SF that is 38±FT high.

The net adjustment is upward.

## Lease Data #4: Patterson Road, Shirley, MA

Pending lease of a 36,380±SF warehouse space for 6 years at $5.25/SF in Year 1; $5.50/SF in Years 2-3 and $5.75/SF in Years 4-6, triple net.

Upward adjustment

**Type of Building**: The comparable is a lower quality warehouse building, inferior to the subject good quality manufacturing building.

**Rail**: The comparable doesn't have rail available; the subject has the availability of rail.

**Percentage Office**: The comparable has 11% office space, inferior to the subject with 26% office space.

Downward adjustment:

**Ceiling Clearance**:  The comparable has ceiling clearance of 30±FT.  The subject has clearance of mostly 19±FT; there is an additional 3,900±SF that is 38±FT high.

**Condition**: The comparable will be new and in excellent condition, superior to the good condition of the subject.

**Building Size**:  The comparable is 36,380±SF; the subject is 53,844±SF.

The net adjustment is zero.

## Lease Data #5: 28 Bowditch Drive, Shrewsbury, MA

Pending lease of a 41,040±SF manufacturing building for 5 years at $5.95/SF in Year 1, followed by annual CPI increases, triple net.

Upward adjustment

**Rail**: The comparable doesn't have rail available; the subject has the availability of rail.

**Percentage Office**: The comparable has 11% office space, inferior to the subject with 26% office space.

Downward adjustment:

**Location**: The comparable is in Shrewsbury.  Industrial buildings in Shrewsbury tend to rent for a higher rent/SF than Lunenburg due to a superior local economy and road network.

The net adjustment is zero.

After adjustments, the estimated market rent of the subject building is $5.75/SF, triple net.

### Potential Gross Income

The potential gross income (PGI) is $309,603 (53,844±SF x $5.75/SF = $309,603).

**Vacancy and Collection Loss**:  Expenses relative to vacancy and collection loss will be incurred during a typical term of ownership.  In estimating vacancy and collection loss for the subject, consideration is given to the amount of comparable industrial space on the market, approximately 12.4% according to a vacancy study conducted by the Foster Company.

The subject is a good quality manufacturing building, assumed to be in good condition and would likely be in good demand.  After all factors are considered, vacancy is estimated at 8%, collection loss is estimated at an additional 2%, or a combined vacancy and collection loss of 10%.

### Effective Gross Income

Deducting the estimated 10% vacancy and collection loss from the PGI results in an effective gross income (EGI) of $278,643.

-61-

### Operating Expenses

**Management**: As the building is suited for a single tenant, management is estimated at 3% of EGI. This estimate is based on input from representatives of management companies.

**Structural Maintenance**: The amount expended for structural maintenance depends on the condition of the building. Given that the building is in assumed good condition, this is estimated at 3% of EGI.

**Reserves**: The amount estimated for reserves for replacement of short-lived items is 2% of EGI.

**Professional Fees**: Professional fees include legal and accounting. In buildings like the subject, this expense would be minimal. In this analysis, $500 is considered a reasonable estimate.

**Real Estate Taxes**: The tenant would be responsible for tax expense; the owner would be responsible for tax related to vacant space. The estimated tax expense related to just Lot 1B (after pro-rating the land assessment) is $24,902 (rounded); the owners share of the expense would be $2,490 ($24,902 x .10 = $2,490).

**Insurance**: The tenant would be responsible for insurance expense; the owner would be responsible for insurance related to vacant space. Based on expenses obtained for other properties, insurance is estimated at $8,000; the owners share of the expense would be $800 ($8,000 x .10 = $800).

**Miscellaneous**: The amount estimated for miscellaneous items is 1% of EGI, which includes grounds maintenance and minimal utility expenses to cover vacancy.

**Total Expenses**: Expenses total $28,867.

### Net Operating Income

Deducting the operating expenses from EGI, the net operating income (NOI) projected is $249,776.

| | | |
|---|---:|---:|
| Potential gross income (PGI) | | $309,603 |
| less vacancy and credit loss | ( $30,960) | |
| Effective gross income (EGI) | | 278,643 |
| less: management (3%) | ( 8,359) | |
| structural maintenance (3%) | ( 8,359) | |
| reserves (2%) | ( 5,573) | |
| professional fees | ( 500) | |
| real estate taxes | ( 2,490) | |
| insurance | ( 800) | |
| miscellaneous (1%) | ( 2,786) | |
| Total expenses | ($ 28,867) | |
| Net operating income (NOI) | | $249,776 |

## Overall Capitalization Rate

An overall capitalization rate of 10.2% was abstracted from Comparable Sale #3 and 11.5% for Comparable Sale #4.

The band of investment technique was also used to calculate an overall capitalization rate.

Band of investment is defined on Page 25 of the 4th edition of The Dictionary of Real Estate Appraisal (Chicago: Appraisal Institute, 2002) as: "A technique in which the capitalization rates attributed to components of a capital investment are weighted and combined to derive a weighted-average rate attributable to the total investment."

Band of investment analysis is comprised of two components:

1.   Mortgage composition (principal and interest), the typical financing for this type of investment.

2.   Equity contribution and yield required by an equity investor.

In order to calculate an overall capitalization rate, it is necessary to determine the rate of return expected by an investor.

Following are examples of returns being received from other types of investments published in the Money Rates column of The Wall Street Journal on September 23, 2004.

| | |
|---|---|
| Prime rate | 4.75% |
| Treasury Bills (13 weeks) | 1.69% |
| Treasury Bills (26 weeks) | 1.87% |
| Fannie Mae 30 year mortgages | 5.40% |
| Freddie Mac 30 year mortgages | 5.37% |
| Corporate Bonds | |
| 1-10 yr   high quality | 3.58% |
| medium quality | 4.12% |
| High-yield corporates | 7.24% |

Considering the rates received on the types of investments listed previously, the risk inherent in investment in real estate, the increased vacancy in the area, and the good quality and assumed good condition of the subject, the equity rate estimated is 10%. This is the rate of return used in the band of investment technique to develop the overall capitalization rate.

Another component of this technique required to calculate the overall capitalization rate is mortgage terms available. Based on conversations with loan officers, it was concluded that the most probable mortgage terms are a 75% loan-to-value ratio at 6.00% interest amortized over a 15-year period with a 3-5 year call.

Based on the mortgage terms estimated, the mortgage constant for the subject would be .1012628; the equity requirement, 25%; the rate of return on equity, 10%; for a projected holding period of 7 years.

Following are the calculations used in developing the overall capitalization rate by band of investment analysis.

| LOAN TO VALUE RATIO | x | MORTGAGE CONSTANT | | |
|---|---|---|---|---|
| .75 | | .1012628 | = | .075947 |
| EQUITY REQUIREMENT | x | RATE OF RETURN EXPECTED | | |
| .25 | | .10 | = | .025000 |
| | | Total | = | .100947 |
| | | Rounded | | .1000 |

In addition to the types of investments above, the Third Quarter 2004, <u>Korpacz Real Estate Investor Survey</u> was reviewed. Overall capitalization rates for the noninstitutional-grade national industrial market ranged from 7.25% to 12.5%, with an average of 9.52%.

Overall capitalization rates of 10.2% and 11.5% were obtained from the market. A rate of 10% was obtained from use of the band of investment technique and a rate of 9.52% was obtained from Korpacz. A rate of 10.0% was concluded reasonable for the subject given the risk associated with the vacancy in the area but also the good quality and assumed good condition of the building.

Dividing the projected NOI by a 10.0% overall capitalization rate yields the estimated market value of the building and supporting land area.

| NOI | / | CAPITALIZATION RATE | = | VALUE |
|---|---|---|---|---|
| $249,776 | | .10 | | $2,497,760 |
| | | Rounded | | $2,500,000 |

## Excess Land Value

As previously detailed, the owners were proposing to expand the building by 34,800±SF, however, it was never completed. The expansion would have maximized the use of the site. The potential expansion represents 39% of the total potential building area (34,800±SF / 88,644±SF = 39%).

The excess land value is estimated to be 39% of the total land value, or $202,800 ($520,000 x .39 = $202,800), rounded to $205,000.

The total value of the subject by the income capitalization approach is calculated as follows:

| | |
|---|---|
| Value of Income Stream | $2,500,000 |
| Excess Land Value | $ 205,000 |
| Total | $2,705,000 |

As of September 27, 2004, the estimated market value of the subject by the income capitalization approach is:

**TWO MILLION SEVEN HUNDRED FIVE THOUSAND DOLLARS**
**$2,705,000**

RECONCILIATION OF VALUE INDICATIONS INTO FINAL ESTIMATE

The estimated site value of Lot 1A by the sales comparison approach based on a comparison to 4 comparable sales is $305,000. The estimated site value of Lot 1B using the same sales is $520,000.

The estimated value of Lot 1B by the cost approach is $2,850,000. This approach is considered a weaker indicator of value because this type property isn't generally purchased based on the cost of construction less depreciation, plus land value.

The market value of Lot 1B estimated by the sales comparison approach based on a comparison of 5 sales comparables is $2,425,000.  This is considered a good indicator of value because most industrial properties are owner occupied in this market area.

The market value of the property estimated by the income capitalization approach based on a comparison of 5 lease comparables is $2,705,000.  This is considered a weaker indicator of value given the predominance of owner occupied properties in the market area.

The greatest weight was placed on the sales comparison approach.

As of September 25, 2004, the final estimated market values are:

**LOT 1A**
**THREE HUNDRED FIVE THOUSAND DOLLARS**
**$305,000**

**LOT 1B**
**TWO MILLION FOUR HUNDRED TWENTY-FIVE THOUSAND DOLLARS**
**$2,425,000**

*Joel C. Buthray*

Joel A. Buthray, MAI
Certified General
Real Estate Appraiser
Commonwealth of MA #929

## MARKETING AND EXPOSURE PERIOD

Factors to consider in estimating a marketing period include the economic climate and the state of the real estate market, and current lending policies.

Based on the assumption that the subject property is free and unencumbered, and marketed at the value estimated in this report, the marketing and exposure period estimated for the subject is 6 months.

## CERTIFICATION

1.  The statements of fact contained in this report are
    true and accurate.

2.  The reported analyses, opinions, and conclusions are
    limited only by the reported assumptions and limiting
    conditions, and are my personal, impartial, and unbiased
    professional analyses, opinions, and conclusions.

3.  I have no bias with respect to the property that is the
    subject of this report or the parties involved with this
    assignment.

4.  My engagement in this assignment was not contingent upon
    developing or reporting predetermined results.

5.  My compensation for completing this assignment is not
    contingent upon the development or reporting of a
    predetermined value or direction in value that favors
    the cause of the client, the amount of value opinion,
    the attainment of a stipulated result, or the occurrence
    of a subsequent event directly related to the intended use
    of this appraisal.

    This appraisal assignment was not based on a requested
    minimum valuation, a specific valuation, or the approval
    of a loan.

6.  My analyses, opinions, and conclusions were developed, and
    this report has been prepared in conformity with the
    Uniform Standards of Professional Appraisal Practice
    (USPAP) of the Appraisal Foundation, and with the Code of
    Professional Ethics and Standards of Professional
    Appraisal Practice of the Appraisal Institute.

7.  I certify that the use if this report is subject to the
    requirements of the Appraisal Institute relating to review
    by its duly authorized representatives.

8.  The appraiser has complied with the competency provision
    of USPAP and has completed valuations of properties such
    as the subject within the past two years.

9.  No appreciable professional assistance was provided to
    the appraiser who prepared this report other than those
    whose signatures are affixed to this Certification.

10. The property was inspected by the undersigned on 09/25/04.

JOEL A. BUTHRAY, MAI
Certified General Real Estate Appraiser
Commonwealth of Massachusetts #929

11. As of the date of this report, I, Joel A. Buthray,
    have completed the requirements of the continuing
    education program of the Appraisal Institute.

JOEL A. BUTHRAY, MAI
Certified General Real Estate Appraiser
Commonwealth of Massachusetts #929

ADDENDUM

**K02059PG250**

## EXHIBIT A

A certain tract of land, containing 17.151 acres, situated in Lunenburg, Mass. on the southeasterly side of Pioneer Drive and the southwesterly side of Leominster-Shirley Road, and being more particularly described as follows:

BEGINNING at the most westerly corner thereof, at a point on the southeasterly side of Pioneer Drive at land of Teodorico Vittorioso et al and at the Town Line between Lunenburg and Leominster;

THENCE northeasterly by a curve to left, radius 2530 feet, for a distance measured on the arc of 757.78 feet by the southeasterly side of Pioneer Drive to a point of tangent;

THENCE N 14 -20' E - 124.93 feet by the southeasterly side of Pioneer Drive to a point of curve;

THENCE northeasterly to southeasterly by a curve to the right, radius 50 feet, for a distance measured on the arc of 93.56 feet by the southeasterly side of Pioneer Drive to a point of tangent on the southwesterly side of Leominster-Shirley Road;

THENCE S 59 -36' -15" E. 388.93 feet by the southwesterly side of Leominster-Shirley Road to a point of curve;

THENCE southeasterly by a curve to the right, radius 2000 feet, for a distance measured on the arc of 189.57 feet by the southwesterly side of Leominster-Shirley Road to a point of tangent;

THENCE S 54 -10' -25" E - 455.78 feet by the southwesterly side of Leominster-Shirley Road to a corner at land of the Massachusetts Bay Transit Authority;

THENCE southwesterly by a curve to the left radius 1991.33 feet, more or less, for a distance measured on the arc of 285.62 feet, more or less, by last named land to a point of compound curvature;

THENCE southwesterly by a curve to the left, radius 3991.86 feet, more or less, for a distance measured on the arc of 732.52 feet, more or less, by last-named land to a corner at the Town Line between Lunenburg and Leominster;

THENCE N 64 -80' -85" W 825.90 feet by the Town Line and by land of the Massachusetts Bay Transit Authority and land of Teodorico Vittorioso et al to the point of beginning.

BEING shown on a plan entitled "Plan of Land in Lunenburg, Mass. owned by Associates Realty Trust" dated April 4, 1991 prepared by Whitman & Bingham Assoc. - Reg. Engineers & Surveyors, 305 Whitney Street, Leominster, Mass. 01453 and recorded as Plan Book ___748___, Plan /0.

ATTEST NO WOR JOHN B. McLAUGHLIN, REGISTER

MASSACHUSETTS QUITCLAIM DEED SHORT FORM (INDIVIDUAL) 801

James J. Piermarini and Gerald J. Crowley, Trustees of Associated Realty Trust, A Massachusetts trust u/d/t dated December 26, 1967 and recorded with the Worcester Northern District Registry of Deeds in Book 1017, Page 446, as amended

of 25 Mohawk Drive, Leominster, Worcester                    County, Massachusetts,

for consideration paid, and in full consideration of Two Hundred Thousand and 00/100 Dollars ($200,000.00)

grant to The Citto Corporation, a Massachusetts corporation having a usual place of business at Nancy Court, Leominster, Massachusetts

with quitclaim covenants

the land in Lunenburg, Massachusetts as described in Exhibit A attached hereto.

[Description and encumbrances, if any]

SEE INSTRUMENT
B. 3068
P. 194

SEE INSTRUMENT
B. 3025
P. 177

Witness ...our... hand & and seals this ...8th... day of April ... 19.91.

..............................................
James J. Piermarini,          Trustee

..............................................
Gerald J. Crowley,            Trustee

The Commonwealth of Massachusetts

Worcester          ss.                    April  8,  1991

Then personally appeared the above named James J. Piermarini and Gerald J. Crowley, Trustees of Associates Realty Trust u/d/t dated December 26, 1967 and recorded Book 1017, Page 446, and acknowledged the foregoing instrument to be  their     free act and deed before me

..............................................
Marcy Keud McKeboe      Notary Public — Justice of the Peace

My commission expires          -A 6/27 19 95

My Commission Expires January 27, 1995

(Joint Tenants — Tenants in Common.)

AS AMENDED BY CHAPTER 497 OF 1969



# LAND SALE COMPARABLES



# BUILDING SALE COMPARABLES



# LEASE COMPARABLES



ZONE B

ZONE C

*EXPLANATION OF ZONE DESIGNATIONS

NOTES TO USER

Seminars
- Techniques of Income Property Appraising, 1/99
- Sales Comparison Approach, 11/98
- Investment Analysis, 10/98
- Maximizing the Value of an Appraisal Practice, 8/95
- Due Diligence, Contaminated Properties and the Real Estate Appraiser, 1/95
- Understanding Limited Appraisals and Reporting Options, 10/94
- Commercial Real Estate Appraisal Seminar, 7/90
- Cash Equivalency, 5/88
- Rates, Ratios and Reasonableness, 5/88

**PROFESSIONAL MEMBERSHIPS:**  Appraisal Institute, MAI #11326

**APPRAISAL EXPERIENCE:**  Appraisals and/or feasibility studies of diverse properties for governmental agencies, financial institutions, insurance companies, industrial corporations, attorneys, developers, relocation agencies and individual clients.

**TYPES OF PROERTIES APPRAISED:**  Residential, condominiums, sub-divisions, commercial, industrial, unimproved land, churches, apartments, shopping centers and motels.

**MEDIATION WORK:**  City of Worcester and Providence and Worcester Railroad

**PAST AREAS OF ASSIGNMENT:**  Massachusetts, Connecticut and Rhode Island

**CERTIFICATION:**  Certified General Real Estate Appraiser
Commonwealth of Massachusetts #929 to 05/03/05

**RECERTIFICATION:**  As of this date, I have completed the requirements of the continuing education program of the Appraisal Institute.



1 8 5 1

# CLINTON
## SAVINGS BANK
*Customers 1st, for Generations*

September 24, 2004


Joel Buthray, MAI
O'Hara-Buthray Associates, Inc.
11 Harvard Street
Worcester, MA   01609


RE:        **140 Leominster-Shirley Road, Lunenburg, MA**


Dear Joel:

This letter authorizes you to appraise the above-referenced real estate and to submit two
copies of the written appraisal report for the property to the Clinton Savings Bank in
accordance with the terms and conditions stated here and in accordance with the Uniform
Standards of Professional Appraisal Practice promulgated by the Appraisal Standards
Board. The report will conform with the code of ethics of the Appraisal Institute and the
Massachusetts Board of Real Estate Appraisers.

The written appraisal reports shall be in the Complete Self-Contained format, the value to
include the value of the excess land associated with the property. The purpose of the
appraisal is to estimate the value of the subject real estate. The report shall reflect current
market conditions with an effective date not later than your most recent inspection of the
real estate.

All correspondence regarding this appraisal assignment and the completed appraisal
reports shall be addressed to:

> David A. Harmon, Assistant Vice President
> Clinton Savings Bank
> 200 Church Street
> P.O. Box 770
> Clinton, MA 01510

*Discover the rewards of making CSB your PFI.*

**OFFICE LOCATIONS**

200 CHURCH STREET         563 MAIN STREET        1 MAIN STREET          35 CENTRAL STREET        231 WEST BOYLSTON STREET
CLINTON, MA 01510         BOLTON, MA 01740       STERLING, MA 01504     BERLIN, MA 01503         WEST BOYLSTON, MA 01583
TEL: 978-365-3700         TEL: 978-779-2857      TEL: 978-422-8133      TEL: 978-838-2286        TEL: 508-835-9944
FAX: 978-365-3710         FAX: 978-779-6295      FAX: 978-422-0130      FAX 978-838-2901         FAX: 508-835-9888

TEL: Connecting all offices–978-365-3700, 888-744-4272(4CSB)
FAX: Operations / Administration–978-365-3719 / Lending–978-365-3718                WEBSITE www.clintonsavings.com

Please note that the property owner, Tradex Corp., is not your client.

The agreed upon delivery time of the appraisal reports is three weeks. Your fee for appraisal services and two copies of the report is $3,500.

Please indicate your acceptance of this assignment by signing and returning the original copy of this letter to my attention at the Bank.


Sincerely,

David A. Harmon
Assistant Vice President


ACCEPTANCE:

Joel Buthray, MAI                                    9/27/04
                                                     Date

## QUALIFICATIONS OF APPRAISER

### Joel Buthray, MAI

**EMPLOYMENT:**

Partner, O'Hara-Buthray Associates, Inc.
*Actively involved in appraising, consulting and
reviewing appraisal reports*
Worcester, Massachusetts
September 1995 to date

Associate, Patrick McMahon Associates, Inc.
*Real Estate Appraiser*
Worcester, Massachusetts
November, 1986 to August, 1995

Guaranty Bank and Trust
*Collections/Credit Analyst*
Worcester, Massachusetts
April 13, 1983 to November 7, 1986

Household Finance Company
*Assistant Manager*
Worcester, Massachusetts
December, 1981 to April 10, 1983

**EDUCATION:**

Worcester State College
Worcester, Massachusetts
*Bachelor of Science*
*Major in Economics, Minor in Philosophy*

Appraisal Institute
- Business Practices and Ethics, 3/04
- Analyzing Distressed Real Estate, 2/04
- Analyzing Operating Expenses, 01/04
- Support Capitalization Rates, 10/02
- Appraising Income Properties, 4/01
- Commercial Highest and Best Use, 11/00
- Appraisal of Local Retail Properties, 3/99
- Standards of Professional Practice, Part C, 5/98
- Standards of Professional Practice, Part B, 3/95
- Standards of Professional Practice, Part A, 3/95
- Case Studies in Real Estate Valuation, 3/92
- Report Writing & Valuation, 9/91
- Capitalization Theory & Techniques, Part B, 10/90
- Capitalization Theory & Techniques, Part A, 5/90
- Basic Valuation Procedures, 6/89
- Standards of Professional Practice, 10/88
- Real Estate Appraisal Principles, 10/86