**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| LASALLE BUSINESS CREDIT, LLC, f/k/a) <br> LASALLE BUSINESS CREDIT, INC.,       ) <br>                                                             ) <br>                        Plaintiff,                      ) <br> v.                                                        ) <br>                                                             ) <br> CLINTON SAVINGS BANK,                  ) <br>                                                             ) <br>                        Defendant.                   ) | Case No. 05-CV10268-DPW |

## CLINTON SAVINGS BANK'S MOTION TO DISMISS COMPLAINT

Clinton Savings Bank, a Massachusetts savings bank established under the laws of the Commonwealth of Massachusetts ("Defendant"), moves that this Court, pursuant to Fed. R. Civ. P. 12, enter an order dismissing Counts I through V of the Complaint filed by LaSalle Business Credit, LLC f/k/a LaSalle Business Credit, Inc. ("Plaintiff"), on the grounds that: (i) the Plaintiff fails to plead, with particularity, the facts necessary to support the elements of the Plaintiff's RICO conspiracy claim (Count I) and the Plaintiff's state common law claim of aiding and abetting fraud (Count II); (ii) the Plaintiff fails to plead, and cannot plead, facts to support any duty that the Defendant might owe to the Plaintiff with respect to the Plaintiff's "breach of assumed duty" claims in Count V; (iii) the Plaintiff asserts a claim of "equitable subordination" under Count IV, which claim does not exist under state or federal non-bankruptcy law; and (iv) the Plaintiff lacks standing to prosecute its state law claims for recovery of fraudulent transfer (Count III) and equitable subordination (Count IV)(to the extent that such claim exists). In support of this Motion, Defendant respectfully states as follows:

## I. BACKGROUND

On or about February 9, 2005, the Plaintiff filed a five-count complaint against the Defendant, based upon the Defendant's actions, in 2004, with respect to a commercial checking account maintained by a customer of the Defendant, Kingsdale Corporation d/b/a J&J Chemical Distributors ("J&J Chemical"). In the Complaint, Plaintiff alleges it was the lender to Gitto Global Corporation ("Gitto Global"). According to Plaintiff, Gitto Global deceived the Plaintiff into continuing to make loans to Gitto Global through an elaborate scheme of deception as to the extent of Plaintiff's collateral for its loans to Gitto. Part of this scheme, according to the Complaint, utilized false payments from fictitious account debtors reflected in a "check-kite scheme" involving three accounts: (i) the J&J Chemical commercial checking account at the Defendant (the "J&J Chemical Account"); (ii) Gitto Global's checking account at LaSalle Bank (the "LaSalle Account"); and (iii) a controlled disbursement account at Fleet Bank, N.A. subject to a blocked account agreement between Plaintiff, Fleet Bank and Gitto Global (the "Fleet Blocked Account").

Specifically, Plaintiff alleges that Defendant was aware of, or knew of, the "check-kite scheme" involving the J&J Chemical Account, and that Defendant is liable to Plaintiff as a result of Defendant's actions in: (a) failing to close the J&J Chemical Account and continuing to permit J&J Chemical to write checks against uncollected funds; (b) requiring a loan agreement from J&J Chemical and secured guarantees from Tradex Corporation, Frank Miller, and Charles N. Gitto, Jr. in order to continue to provide services to the J&J Chemical Account; and (c) in September 2004, demanding payment of J&J Chemical's loan and dishonoring checks drawn on the J&J Chemical

Account totaling $11,890,588, which checks had been deposited in the Fleet Blocked Account, thus causing the collapse of the check kiting scheme.

Prior to filing the Complaint, the Plaintiff took discovery of Defendant pursuant to a request for production of documents and depositions of two of the Defendant's employees, in connection with proceedings in a civil action in this Court brought by the Plaintiff, in October 2004, against various parties associated with Gitto Global, including Frank Miller, Charles N. Gitto, Jr., J&J Chemical, and Tradex Corporation.[1] Such discovery encompassed all transactions in the J&J Chemical Account from 2002 through and including September 2004, as well as: (i) all transactions and communications between the Defendant and Gitto Global, J&J Chemical, Tradex Corporation ("Tradex"), Charles N. Gitto, Jr. ("Charles Gitto"), and Frank Miller ("Miller"); and (ii) all of the Defendant's internal records, e-mails and memoranda with respect to these corporations and individuals.

The Complaint advances three theories of direct liability of Defendant to Plaintiff, one based on a federal statutory cause of action and two based upon state common law causes of action: (1) liability (including treble damages and attorneys' fees and expenses), under the federal "RICO" statute (18 U.S.C. §§1962(d) & 1964(c)) for a civil RICO conspiracy (Count I); (2) liability under a state common law cause of action for aiding and abetting fraud (Count II); and (3) liability under a state common law cause of action for "breach of assumed duty" (Count V). The Plaintiff also seeks avoidance, under state law, of an alleged fraudulent transfer of Tradex Corporation ("Tradex") to

---

[1] The civil action is *LaSalle Business Credit, LLC  v. Gitto C. Gitto, Frank Miller, Charles N. Gitto, Jr., Nancy Gitto Panagiotes, John D. Tersigni, Kathleen M. Carland, William Deakin, Janice Chaisson, Helen Kozak, Kingsdale Corp. d/b/a J&J Chemical Distributors, and Tradex Corp.*, Case No. 04-CV-12227-DPW.

Defendant of Tradex's guarantee and mortgage securing the guarantee (Count III), and equitable subordination (apparently under state law) of the Defendant's mortgage on Tradex's real estate to the Plaintiff's attachment on the same real estate (Count IV).

Subsequent to the filing of the Complaint, Tradex, on February 16, 2005, filed an original, voluntary petition under Chapter 11 of Title 11 of the United States Code. Gitto Global filed its own Chapter 11 petition in September 2004 (Complaint, ¶34).

## II. ARGUMENT

### A.   STANDARDS FOR MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(6)

Fed. R. Civ. P. 12(b)(6) permits the Defendant to file a motion to dismiss the Complaint, in lieu of an answer, if the Defendant asserts that the Plaintiff has failed to state a claim upon which relief may be granted. In considering a motion to dismiss, the Court must take all "well-pleaded" facts in the Complaint to be true and must draw all reasonable inferences in the Plaintiff's favor. *Conley v. Gibson*, 355 U.S. 41, 45-48, 78 S.Ct. 99, 101-03, 2 L.Ed.2d 80 (1957); *Feinstein v. Resolution Trust Corp.*, 942 F.2d 34, 37 (1st Cir. 1991). The Court should exempt from its consideration, however, any "facts" that have been conclusively contradicted by Plaintiff's concessions or otherwise, and should not rely on any "bald assertions, unsupportable conclusions, and opprobrious epithets" in the Complaint. *Feinstein*, 942 F.2d at 37 (citing *Chongris v. Board of Appeals*, 811 F.2d 36, 37 (1st Cir. 1987)).

**B.     COUNT I OF PLAINTIFF'S COMPLAINT FOR CIVIL RICO CONSPIRACY SHOULD BE DISMISSED FOR FAILURE TO PLEAD ALL OF THE ELEMENTS OF THE RICO CLAIM WITH PARTICULARITY**

The Racketeer Influenced and Corrupt Organizations Act (RICO) makes it unlawful to conspire to violate 18 U.S.C.A. §§1962(a)-(c). <u>18 U.S.C.A. §1962(d)</u>. The First Circuit requires a plaintiff prove four elements to support a claim for conspiracy under the RICO statute. Liability under the theory of conspiracy is proved by showing:

> (1) the existence of an enterprise affecting interstate commerce, (2) that the defendant knowingly joined the conspiracy to participate in the conduct of the affairs of the enterprise, (3) that the defendant participated in the conduct of the affairs of the enterprise, and (4) that the defendant did so through a pattern of racketeering activity by agreeing to commit, or in fact committing, two or more predicate offenses.

*Aetna Casualty Surety Company v. P&B Autobody*, 43 F.3d 1546 (1st Cir.1994).

Fed. R. Civ. P. 9(b) requires that a party plead fraud with particularity; it is settled in the First Circuit that this requirement extends to pleading predicate acts of fraud under RICO. *Ahmed v. Rosenblatt*, 118 F.3d 886, 889 (1st Cir. 1997); *Feinstein v. Resolution Trust Corp.*, 942 F.2d 34, 42 (1st Cir.1991); *New England Data Services, Inc. v. Becher*, 829 F.2d 286, 289 (1st Cir. 1987). With respect to the substantive RICO claim and the RICO conspiracy claim, a plaintiff must also plead sufficient and particular facts adequate to portray specific instances of racketeering and the causal nexus between the racketeering activity and the alleged harm. *See Miranda v. Ponce Federal Bank*, 948 F.2d 41 (1st Cir.1991); *Liberty Mutual v. Diamonte*, 138 F.Supp.2d 47 (D.Mass.2001). The First Circuit has stated "a RICO conspiracy claim that is alleged wholly in conclusory terms will not withstand a motion to dismiss." *See Miranda*, 948 F.2d at 48. To

withstand a motion to dismiss, the claim must identify specific "details of the alleged conspiracy or the predicate acts committed in the pursuit thereof." See Id.  The details that a plaintiff must identify are those showing that a defendant knowingly entered into an agreement of conspiracy to participate in the conduct of an enterprise by committing two or more predicate acts.

The Plaintiff's complaint states its RICO claim in conclusory, vague terms, and omits several essential elements of a RICO conspiracy claim. The most significant and damaging omission is Plaintiff's failure to identify the Defendant's participation in two or more predicate acts under the RICO statute. See *Ahmed v. Rosenblatt*, 118 F.3d. at 889 ("failure to plead predicate acts adequately is enough to sink [a] RICO claim"); *Feinstein v. Resolution Trust Corp.*, 942 F.2d at 42 ("[i]t is not enough for a plaintiff to file a RICO claim, chant the statutory mantra, and leave the identification of predicate acts to the time of the trial.").  A "predicate act" is an act indictable under one or more certain specified criminal laws under 18 U.S.C. §1961(1)(B). The Complaint is devoid of any reference to a specific predicate act committed by Defendant; instead, the Plaintiff relies on allegations that: the Defendant knew of the alleged "check kite" scheme, but failed to shut down the scheme and continued services to the J&J Chemical Account (Complaint, ¶¶41, 42)[2]; failed to notify the Plaintiff of the scheme (Complaint, ¶41); formalized its

---

[2]  Defendant disregards the Plaintiff's allegations that the Defendant "joined" the Conspiracy (defined in Complaint ¶18 as a "conspiracy to conduct J&J Chemical's affairs through a 'pattern of racketing activity'") through Defendant's actions, because such allegations are unsupported conclusions. The Complaint omits details of how and when the Defendant allegedly joined the Conspiracy or agreed to participate in an enterprise (identified as J&J Chemical's activities in ¶17), including dates, the particular employees of the Defendant involved, and the communications from which the Defendant's agreement to join or participate may be inferred. See *Ahmed v. Rosenblatt*, 118 F.3d 886, 889 (1st Cir. 1997)(complaint failed to make its case on the "enterprise" element when it merely alleged that an enterprise existed, and failed to set forth allegations as to how the defendants were associated); *Miranda v. Ponce Federal Bank*, 948 F.2d 41, 48-49 (1st Cir. 1991)(failure to provide any specifics as to the details of the alleged conspiracy

"lending relationship" with respect to the scheme by documenting a loan with J&J Chemical, and taking guarantees, and related collateral, from Charles Gitto, Tradex, and Miller (Complaint, ¶45); and shut down the J&J Chemical Account when J&J Chemical's loan came due (Complaint, ¶¶59 & 60). Plaintiff connects none of these actions to an indictable "predicate act" under the RICO statute; therefore, Count I must be dismissed[3].

Aside from the lack of allegations of predicate acts, Count I is deficient in many other respects. Plaintiff fails to plead sufficient facts to identify an "enterprise" affecting interstate commerce; instead, Plaintiff names J&J Chemical's "activities" as the "enterprise" under the RICO statute, but fails to state any facts that state what specific activities J&J Chemical engaged in or tie J&J Chemical's activities to interstate commerce in any way, other than an unsupported conclusion that such activities "affect interstate commerce" (Complaint, ¶17). Similarly, the Plaintiff fails to allege any facts that support the Defendant's "participation" in the alleged enterprise, other than continuing to provide services to the J&J Chemical Account after allegedly acquiring the knowledge that the J&J Chemical was being used in a check kite scheme (Complaint, ¶¶42 & 46). "Participation," at the very least, requires an allegation of *some* part in directing the enterprise's affairs. *Reves v. Ernst & Young*, 507 U.S. 170, 179, 113 S.Ct.

---

is fatal to a RICO conspiracy claim under 18 U.S.C. §1962(d), as is the failure to connect plaintiff's injury to an enumerated predicate act).

[3] Plaintiff does make an allegation, in ¶18 of the Complaint, that the objective of a "Conspiracy" between Miller, Charles Gitto, and "various individuals employed by Gitto Global or associated with Gitto Global" (but apparently excluding J&J Chemical and Tradex), was to defraud Plaintiff, in violation of 18 U.S.C. §1344(a)(1). However, although the Plaintiff alleges that it is a second tier, wholly owned subsidiary of a federally insured national bank, LaSalle Bank National Association (Complaint, ¶3), and that LaSalle Bank provides funding to Plaintiff, it fails to allege whether its own activities or loans are subject to FDIC review or regulation, or that it is a "financial institution" for purposes of §1344. 18 U.S.C. §1344 protects only federally chartered or insured "financial institutions". *Cf. U.S. v. Walsh*, 75 F.3d 1 (1st Cir. 1996)(wholly owned subsidiary of federal bank, which shared officers with its parent, reported its results on consolidated basis with parent, and was subject to examination by the same bank examiners as its parent, qualified as a "financial institution" for purposes of 18 U.S.C. §1344).

1163, 122 L.Ed.2d 525 (1993). The Complaint lacks any such allegation with respect to the Defendant, even if all well-pled facts are taken as true.

Moreover, the Plaintiff itself has trouble identifying the nature and the scope of the enterprise in which Defendant is alleged to have participated. The Complaint confuses and appears to use, interchangeably, the alleged "enterprise" (the activities of J&J Chemical – Complaint ¶17), the alleged "Conspiracy" (the conspiracy to conduct J&J Chemical's affairs through an unspecified "pattern of racketeering activity" – Complaint, ¶18), the alleged "Check-kite scheme" (Complaint¶¶20 through 33), and an overall "fraud perpetrated on [Plaintiff] (Complaint, ¶45). It is difficult, if not impossible, for the Defendant to determine what predicate acts the Plaintiff alleges it commits, and in what "enterprise" the Plaintiff alleges that Defendant is supposed to have participated through the commissions of such acts. With Plaintiff's myriad allegations of different conspiracies, the Plaintiff presents a moving target, which renders it impossible for the Defendant to formulate an adequate response.

Finally, the Plaintiff fails to plead sufficient facts, not only with respect to the details of the individual RICO conspiracy elements, but also the causal nexus that must link all of the elements together – how the Defendant's predicate acts, and the Defendant's participation in an enterprise or conspiracy through such predicate acts, proximately cause Plaintiff's specific injuries. Dismissal of Count I, therefore, is proper. See Miranda v. Ponce Federal Bank, 948 F.2d 41, 47-48 (1st Cir. 1991).

Dismissal, with prejudice and without leave to amend, is the appropriate consequence of the Plaintiff's failure to sufficiently plead Count I. This is not a situation in which it is necessary to permit the Plaintiff conduct further discovery for the purposes

of amending its Complaint to restate Count I. Under certain circumstances, i.e., when necessary information is in the exclusive control of the defendant, a court may, before granting a motion to dismiss on a RICO count, permit a plaintiff, after the plaintiff's proper and timely request, to conduct limited discovery and amend his complaint, where it is likely that the discovery will allow him to "plug the holes in the complaint." *Feinstein v. Resolution Trust Corp.*, 942 F.2d 34, 44 (1st Cir.1991); *New England Data Services v. Becher*, 829 F2d 286, 290 (1st Cir. 1987). This permission is within the discretion of the court, and is not automatically applied to every plaintiff. *Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir. 1997); *Feinstein v. Resolution Trust Corp.*, 942 F.2d at 44.

In this case, the Plaintiff should not be allowed leave to conduct additional discovery or amend its complaint. The Plaintiff conducted extensive discovery of the Defendant prior to filing the Complaint. All of the relevant facts and information were thus available to the Plaintiff at the time the Complaint was drafted. Despite the prior discovery and the availability of information, the Plaintiff's RICO Count relies on broad, conclusory statements that fail to tie the Defendant to any predicate acts or knowing participation in a criminal enterprise. The Plaintiff alleges that the Defendant participated in a RICO fraud on the Plaintiff, but "fraud has not been pleaded against [the Defendant] with the requisite specificity and Rule 9(b) has been flouted." *Feinstein v. Resolution Trust Corp.*, 942 F.2d at 44. In these circumstances, dismissal, with prejudice and without leave to amend, rather than a "second bite at the apple," is appropriate under *Becher*.

## C. COUNT II OF PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE, WITH PARTICULARITY, A CLAIM OF "AIDING AND ABETTING FRAUD."

Count II of the Complaint suffers from many of the same deficiencies as Count I of the Complaint, and should also be dismissed without leave to amend. A complaint asserting a claim for aiding and abetting fraud is subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b). *Bamberg v. SG Cowen Securities Corp.*, 236 F.Supp.2d 79, 91 (D. Mass. 2002). In order to sufficiently allege a cause of action for aiding and abetting fraud, under Massachusetts law, a plaintiff must allege, with particularity, facts that indicate that: (1) the defendant gave "substantial encouragement" to another tortfeasor; and (2) the defendant had an "unlawful intent," i.e., the defendant knew that the other party was breaching a duty, and intended to assist that party's unlawful actions. *Spinner v. Nutt*, 417 Mass. 549, 556, 631 N.E.2d 542 (1994); *Kyte v. Phillip Morris Co.*, 408 Mass. 162, 168, 556 N.E.2d 1025 (1990); *Schultz v. Rhode Island Hospital Trust National Bank, N.A.*, 94 F.3d 721, 730 (1st Cir. 1996); *Bamberg v. SG Cowen Securities Corp.*, 236 F.Supp.2d at 90-91. "To establish a common law cause of action for aiding and abetting, plaintiffs must at least demonstrate some measure of 'active participation' and the knowing provision of substantial assistance … to the principal's … alleged fraud." *Schultz v. Rhode Island Hospital Trust National Bank, N.A.*, 94 F.3d at 730 (citing *Spinner v. Nutt*, 417 Mass. 549, 556, 631 N.E.2d 542 (1994)); see also *Stock v. Fife*, 13 Mass. App. Ct. 75, 82 n.10, 430 N.E.2d 845 (1982)(synthesizing the Massachusetts cases regarding the cause of action for aiding and abetting the commission of a tort, and concluding that mere knowledge of the commission of the tort, or presence at the commission of the tort, is not sufficient; there

must be facts present that indicate knowledge of the tortfeasor's plan and its purpose, and affirmative steps taken to encourage the achievement of the result).

The allegations in Count II fail to plead sufficient facts, with particularity, in order to set forth the elements of this cause of action. Count II relies on the details of Gitto Global's actions to defraud the Plaintiff (Complaint ¶¶22, 23, 24, and 26 through 35); the "check-kite scheme" between J&J Chemical and Gitto Global (Complaint ¶20, 21, 24, 25, 31, 32, 33 and 36); the Defendant's actual or imputed knowledge of the "check-kite scheme" (Complaint ¶¶36 through 39); the actions the Plaintiff asserts that the Defendant should have taken with respect to the J&J Chemical Account (Complaint ¶¶40 & 41); the Defendant's continued loans to J&J Chemical (through allowing J&J Chemical to draw against uncollected funds) (Complaint ¶43 & 55); the Defendant's "formalization" of its lending relationship with J&J Chemical (Complaint ¶¶53, 54); and the Defendant's enforcement of J&J Chemical's loan and the dishonor of $11,890,588 in checks drawn on the J&J Chemical Account in September 2004 (Complaint, ¶¶58 through 61). The Plaintiff also makes conclusory, unsupported allegations in Complaint ¶56 that the Defendant substantially assisted the Check-kite scheme, and in Complaint ¶57 that the Defendant's actions caused the harm to Plaintiff to be greater than it otherwise would have been.

These fact allegations, even with all inferences in favor of the Plaintiff, fall short of alleging a Massachusetts claim against Defendant for aiding and abetting fraud. First, Plaintiff fails to make any allegation that would support Plaintiff's contention that Defendant "knew" of the scope or extent of Gitto Global's fraudulent activities, or Defendant had the information, prior to or after April 2004, necessary to "know" that

continuing to permit its customer's transactions in the J&J Chemical Account would support Gitto Global's fraud against Plaintiff or harm Plaintiff. *See* Town & Country State Bank of Newport v. Heritage State Bank, 358 N.W. 2d 387, 390 n.2 & 392 (Minn. 1985)(the warning signs of a check-kite scheme do not amount to conclusive proof of its existence); *see also* U.S. v. Rodriguez-Alvarado, 952 F.2d 586, 589 (1st Cir. 1991)(the mere existence of a check kiting scheme does not, as a matter of law, by itself imply the intent required for a bank fraud conviction under 18 U.S.C. §1344).

At most, the Plaintiff's contentions indicate that the Defendant should have been concerned about J&J Chemical's continued use of its ability to draw against uncollected funds, pursuant to the Defendant's general policy (set forth in Complaint ¶31); the Defendant eventually did become concerned, and protected itself against its own potential loss by formalizing a short term loan arrangement and taking collateral from guarantors (Complaint ¶53 & 54); and Defendant, when J&J Chemical failed to meet its loan documents' deadline for payment, ceased to permit J&J Chemical to continue to draw against uncollected funds and began to dishonor checks drawn based upon such uncollected funds.

The Plaintiff's primary deficiency is its complete lack of allegations regarding the Defendant's intent to participate or support the alleged fraud on the Plaintiff. None of the Complaint's allegations contain sufficient facts to indicate that the Defendant: (1) had the state of mind, or access to the details, necessary to support a claim of knowledge of J&J Chemical's participation in a scheme to defraud Plaintiff; (2) provided the level of assistance necessary to qualify as "substantial assistance" in the scheme; or (3) had the conscious state of mind or unlawful intent necessary to support or assist the scheme.

*Payton v. Abbott Labs*, 512 F.Supp. 1031, 1035 (determination of "substantial assistance" requires consideration of nature of the act encouraged, the amount of assistance given by the defendant, the defendant's presence or absence at the time of the tort, the defendant's relation to the party committing the tort, and the defendant's state of mind); see *Spinner v. Nutt*, 417 Mass. 549, 556-57, 631 N.E.2d 542 (1994)(plaintiff must show that defendant knew of the breach and actively participated in it such that the defendant could not be held to have acted in good faith; complaint failed to make sufficient allegations to show that the fact that trustees acted upon advice of the defendant attorney renders the defendant liable for the fraudulent acts of his clients); *Kyte v. Phillip Morris Co.*, 408 Mass. 162, 168, 556 N.E.2d 1025 (1990)(defendant's general awareness that retail stores sell cigarettes to minors is not sufficient to show that defendant was specifically aware of any substantial role it may have played in a specific retail store's sales of cigarettes to minors); ). *Bamberg v. SG Cowen Securities Corp.*, 236 F.Supp.2d 79, 91 (D. Mass. 2002)(plaintiff's allegations that accounting firm failed to insist that reservations and other problems that it had communicated to the lead accounting firm be included or addressed in the final report, do not sufficiently plead a claim for aiding and abetting the fraud of the lead accounting firm and its client in releasing and promoting an audit that omitted these reservations); see also *Landy v. FDIC*, 486 F.2d 139, 162-63 (3rd Cir. 1973)(complaint's count for aiding and abetting dismissed when plaintiff failed to include sufficient "state of mind" allegations regarding stockbrokers' intent to aid bank president's misuse of bank funds in security speculation).

Despite the Plaintiff's extensive discovery of the Defendant prior to filing the Complaint, its Complaint still falls short of alleging the facts necessary to state a claim

against Defendant for aiding and abetting Gitto Global's fraud on Plaintiff. Accordingly, Count II of the Complaint should be dismissed, with prejudice and without leave to amend.

    **D.    COUNT V OF PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM OF "BREACH OF ASSUMED DUTY."**

Count V of the Complaint has a different problem than Counts I or II, but such problem leads to the same result: dismissal of the Count, with prejudice. Count V is, in essence, a negligence claim, in which the Plaintiff alleges that: (1) the Defendant "assumed a duty and created a special relationship with those reasonably foreseeable to be damages by the Check-kite scheme and Conspiracy"; (2) the Defendant breached that duty; (3) it was reasonably foreseeable to Defendant that Plaintiff could be harmed; and (4) Plaintiff was damaged by Defendant's conduct.

While the Plaintiff's allegations of negligence in Count V are not subject to the same heightened pleading standards as Counts I and II, Plaintiff has still failed to plead a sufficient negligence claim because, as a matter of law, Defendant had no duty to the Plaintiff with respect to its actions with respect to the Check-kite scheme, nor did it have any special relationship with Plaintiff because of the Check-kite scheme. Massachusetts imposes no duty on a bank with respect to creditors of its customer. *See Banks v. Everett National Bank*, 305 Mass. 178, 25 N.E.2d 177 (1940)(bank has no duty to creditors of its customers not to pay properly presented requests for withdrawals, even if the requestor's purpose in requesting such withdrawals is fraudulent). In fact, a depositing bank's liability, with respect to the operation of a checking account, is only to its customer and is

restricted to ordinary care in the collection of an item, including presenting an item or sending it for presentment. M.G.L.A. c. 106, §4-202 & comment.

The Defendant's lack of duty of care to non-customers did not change, even when presented with indications of J&J Chemical's operation of a check-kiting scheme. Although there are no cases on point in Massachusetts, the prevailing view is that a bank generally has no good faith obligation to disclose a suspected check kite to another bank, or to refrain from attempting to shift the check kite loss to another bank. *Frost National Bank v. Midwest Autohaus, Inc.*, 241 F.3d 862, 873-74 (7th Cir. 2001); *Cumis Insurance Society, Inc. v. Windsor Bank & Trust Co.*, 736 F.Supp. 1226, 1235-36 (D. Conn. 1990); *Citizens National Bank v. First National Bank*, 347 So.2d 964, 968 (Miss. 1977); see also *City Check Cashing, Inc. v. Manufacturers Hanover Trust Co.*, 166 N.J. 49, 62, 764 A.2d 411, 418 (2001)("in the check collection arena, unless the facts establish a special relationship between the parties created by agreement, undertaking or contract, that gives rise to a duty, the sole remedies are those provided in the [Uniform Commercial] Code").

Nowhere in the Complaint does the Plaintiff allege sufficient facts to support a "special relationship" between the Plaintiff and the Defendant. Although the Plaintiff alleges (in ¶41) that the Defendant should have, in April 2004, closed the J&J Chemical Account and notified LaSalle Bank of the Check-kite scheme, this allegation is at odds with Defendant's lack of duty to notify LaSalle Bank or to refrain from protecting itself against its potential loss due to the Check-kite scheme. Plaintiff alleges no confidential relationship, contractual duty, or active fraud or misrepresentation by Defendant that would have given rise to a duty to inform the Plaintiff, LaSalle Bank, or Fleet Bank of the

Check-kite scheme. *See Frost National Bank v. Midwest Autohaus, Inc.*, 241 F.3d at 873 n.7.

Moreover, Plaintiff has failed to allege sufficient facts that would support its conclusory statements that Defendant should have foreseen that Plaintiff would be harmed, or that Defendant's breach of any duty was the proximate cause of Plaintiff's harm. The Plaintiff alleges that Gitto Global checks from the LaSalle Account were deposited into the J&J Chemical Account, and that checks from the J&J Account were deposited into the Fleet Blocked Account. Complaint, ¶¶11, 12, 13, 25, 26, 31, & 32. Assuming some duty on the part of the Defendant, the persons who could be foreseeably harmed by Defendant's continuance or discontinuance of the J&J Chemical Account, according to the Plaintiff's allegations, were J&J Chemical, Gitto Global, Fleet Bank, and perhaps LaSalle Bank. Moreover, Plaintiff's allegations regarding the extent of Gitto Global's scheme to defraud Plaintiff (Complaint ¶¶22 through 33) indicate that Plaintiff's losses resulted from more than just the Check-kite scheme through the J&J Chemical Account; the Plaintiff's allegations indicate that the Fleet Blocked Account (which Plaintiff controlled) was just as integral to Gitto Global's fraud, and had as many suspicious indicators (i.e., the majority of the deposits in the Fleet Blocked Account were drawn on the J&J Chemical Account) as the J&J Chemical Account (see Complaint ¶25 – 29).

Based on the lack of allegations to support Plaintiff's assertions of the existence of a duty, the foreseeability of harm to the Plaintiff, and the proximate cause of the damages that Plaintiff suffered, Count V should be dismissed, with prejudice.

E.  **COUNT IV OF PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM OF "EQUITABLE SUBORDINATON."**

Count IV of the Complaint attempts to allege a cause of action for "equitable subordination" of the Defendant's mortgage on the Tradex real estate. "Equitable subordination" is a remedy found solely in bankruptcy law, where a trustee or creditor seeks subordination of the priority of a secured or unsecured obligation to other obligations with junior priority, for the general benefit of the creditors of a bankruptcy estate. Whether the doctrine applies to a non-insider creditor of a debtor in bankruptcy depends on whether the creditor engaged in gross misconduct tantamount of fraud, overreaching, or spoliation to the detriment of others. *E.g.*, *In re Pacific Express, Inc.*, 69 B.R. 112 (9th Cir. BAP 1986). The doctrine is codified in 11 U.S.C. §510(c), and applies only in bankruptcy cases filed under Title 11 of the United States Code.

Moreover, even if the bankruptcy concept of equitable subordination would be adopted by non-bankruptcy state or federal courts, the Plaintiff has failed to state sufficient grounds for equitable subordination. Plaintiff's premise for subordination, in ¶73 and ¶74 of the Complaint, is that the Defendant obtained its mortgage on Tradex's real estate to minimize its own loss from the Check-kite scheme, and without regard to the potential of injury to others as a result of the Check-kite scheme. These contentions, however, disregard that Defendant had a right to protect itself from loss in the Check-kite scheme, even if others would be harmed as a result. *Frost National Bank v. Midwest Autohaus, Inc.*, 241 F.3d 862, 873-74 (7th Cir. 2001).

Accordingly, Count IV should be dismissed, with prejudice, for failure to state a claim against Defendant.

**F.     COUNTS III & IV OF PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFF LACKS STANDING TO PROSECUTE SUCH CLAIMS IN THIS COURT.**

Count III states a cause of action for avoidance of a fraudulent transfer from Tradex to the Defendant, based upon M.G.L.A. c.109A, §5. Count IV seeks equitable subordination of the Defendant's mortgage on Tradex's property to the Defendant's later attachment on the same property. Approximately one week after the Plaintiff filed the Complaint, Tradex filed a Chapter 11 bankruptcy petition.

Consequently, even if the Plaintiff has stated viable claims under Counts III and IV, the Plaintiff no longer has the standing to prosecute such claims against the Defendant in this civil action. Tradex's property is now part of Tradex's bankruptcy estate, and the validity and extent of the claims of the Plaintiff and the Defendant against Tradex, as well as the validity, extent and priority of their respective liens on Tradex's property, are now subject to bankruptcy court jurisdiction (as referred by this Court). *See* 11 U.S.C. §541(a); 28 U.S.C. §§157(b)(2)(B) & (K); LR, D. Mass. 201. The bankruptcy court in the Tradex case also has jurisdiction over proceedings to determine, avoid and recover fraudulent transfers. 28 U.S.C. §157(b)(2)(H).

Moreover, as a result of Tradex's bankruptcy filing, only Tradex or a trustee appointed in Tradex's bankruptcy case has the standing to prosecute the avoidance of fraudulent transfers. 11 U.S.C. §§544(b), 1107(a); *see Hartford Underwriters Insurance Co. v. Union Planters Bank, N.A., N.A.*, 530 U.S. 1, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000)( a statutory right specifically granted to a trustee or debtor in possession can only be exercised by that person, not by individual creditors); *Flip Mortgage Corp. v.*

*McElhone*, 841 F.2d 531, 538-39 (4th Cir. 1988)(affirming dismissal of state fraudulent conveyance counts from complaint because the transferor was now in bankruptcy).

Similarly, the equitable subordination claim may only be pursued in bankruptcy court, in the context of a bankruptcy case. While individual creditors may have standing to pursue an equitable subordination claim, they may do so only within a bankruptcy case and as part of the bankruptcy process, if the creditor has a particularized injury to it as a result of the other creditor's conduct. *E.g. In re Virteous Steel Products Co.*, 911 F.2d 1223 (7th Cir. 1990); *In re Morpheus Lights, Inc.*, 228 B.R. 449 (Bankr. N.D. Cal. 1998).

As a result, Defendant requests that the Court enter an order dismissing Counts III and IV, without prejudice.

## III. CONCLUSION

WHEREFORE, for the reasons set forth above, the Defendant respectfully requests the Court:

    (i) Dismiss Counts I, II, IV, & V of the Plaintiff's Complaint, with prejudice;

    (ii) Dismiss Count III of the Plaintiff's Complaint, without prejudice; and

    (iii) Grant such other relief as the Court may deem just and proper.

Respectfully submitted,

CLINTON SAVINGS BANK
By its attorneys,

 /s/ Kevin C. McGee
Kevin C. McGee (BBO# 548923)
J. Robert Seder (BBO# 450260)
Seder & Chandler
339 Main Street
Worcester, MA 01608
(508) 757-7721

Dated: March 17, 2005